## LEE, COMPTROLLER, *v.* BICKELL, ET AL.

No. 944.  Argued May 10, 1934.—Decided May 21, 1934.

*Messrs. J. V. Keen* and *H. E. Carter,* Assistant Attorneys General of Florida, with whom *Mr. Cary D. Landis,* Attorney General, and *Mr. Robert J. Pleus,* Assistant Attorney General, were on the brief, for appellant.

*Mr. Charles A. Carroll,* with whom *Messrs. Frank B. Shutts* and *Crate D. Bowen* were on the brief, for appellees.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The appellees, complainants in the court below, have brought this suit against the appellant, the Comptroller of the State of Florida, to restrain the enforcement of a Florida statute for the levy and collection of stamp taxes upon the documents described in the bill of complaint. Their contention has been and is that the statute, properly construed, does not apply to the transactions stated in the bill, and that, if so applied, it is in conflict with the due process and commerce provisions of the Constitution of the United States. Amendment XIV; Art. I, § 8.

A District Court of three judges granted an interlocutory injunction, 5 F.Supp. 720, which thereafter was made permanent. The case is in this court upon an appeal by the state Comptroller. Judicial Code, § 266; 28 U.S.C., § 380.

The Florida statute (Chapter 15,787, Laws of Florida, 1931) imposes a stamp tax upon all bonds or certificates of indebtedness issued in Florida; upon each original issue of certificates of stock; and upon all sales of stock or certificates of stock, agreements to sell, memoranda of sales or deliveries, or transfers of title, the stamps to be placed upon the certificates if the assignment of the certificate is to a person named therein, and upon a written memorandum which the seller is required to execute and deliver to the buyer if there is either an agreement to sell or a transfer of title by delivery of a certificate assigned in blank. The provisions of the statute so far as material are printed in the margin.*

---

* " On all sales, agreements to sell, or memoranda of sales or deliveries of, transfers of legal title to shares, or certificates of stock or profits or interest in property or accumulations in any corpora-

The appellees are stockbrokers engaged in business in the City of New York with branch offices in Florida. Orders to buy or sell received from Florida customers are transmitted by the Florida branches, and are executed in New York in accordance with the customs of the Stock Exchange. The Comptroller does not contend that any document signed by the brokers in New York is subject to the tax. To the contrary there is a concession that the stamp taxes applicable to such transactions are those imposed by the New York statute (New York Tax Law, § 270) and by a statute of the United States (26 U.S.C. § 901 [3]), which are substantially the same as the stamp tax law of Florida. What the Comptroller contends is this, that after the transaction is executed in New York, where certificates and memoranda are stamped under the New York and federal statutes, there are certain supplementary papers, copies of the original memoranda, or receipts, or entries in the books, which are signed by the managers or employes of the Florida branches, or on occa-

tion, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock interests, rights, or not, on each $100.00 of face value or fraction thereof 10¢; and where such shares are without par or face value, the tax shall be 10¢ on the transfer or sale or agreement to sell on each share: Provided, that in case of sale, where evidence of transfer is shown only by the books of the corporation, the stamps shall be placed upon such books of the corporation; and where the change of ownership is by transfer of the certificate, the stamps shall be placed upon the certificates; and in case of an agreement to sell or where the transfer is made by delivery of the certificate assigned in blank, there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamp shall be affixed; and every bill or memorandum of sale or agreement to sell before mentioned, shall show the date thereof, the name of the seller, the amount of the sale, and the matter or things to which it refers."

sion by the customers. These, it is said, are memoranda of sales or deliveries within the meaning of the Florida statute. A tax is also claimed where a written order for the sale of shares is signed by a Florida customer and delivered to the Florida agent for transmission to the central office.

The application of the statute to these and similar situations will be determined more easily when the course of business, first in respect of purchases, and next in respect of sales, has been traced in greater detail. What that course of business is appears very clearly from the stipulated facts.

Upon the transmission to New York of an order for the purchase of shares of stock and after the execution of the order upon the floor of the Exchange, the buying and selling brokers sign and exchange what is known as an "exchange contract." There is no contention by the Comptroller that this is taxable in Florida. When the shares are delivered, the rules call for the exchange of what is known as a "sales ticket," a memorandum of the transaction, which bears the stamps required by the Federal Stamp Tax Act and by the statute of New York. 26 U.S.C. § 901 (3); New York Tax Law, § 270. There is no contention that the sales ticket is taxable in Florida. After the execution of the order, the New York office reports the transaction by telegraph over its private wire to the Florida branch, where an employe receives the telegram and reduces it to writing. This copy according to the contention of the Comptroller is a memorandum of sale within the meaning of the Florida statute, and must be stamped accordingly. Another copy of the telegram is commonly, but not invariably, delivered by the branch office to the customer. This too is claimed by the Comptroller to be a taxable memorandum, though a stamp is not required if one has been affixed to the copy retained for the office files. In addition to the

telegraphic notice to its Florida representatives, the New York office follows the practice of sending notice of the purchase by mail directly to the customer. No stamp is required for this notice, which is signed and transmitted in New York. Finally when the purchase has been completed by delivery, there are times when the New York office, instead of holding the certificates for the account of its Florida customer, forwards them to him by registered mail. When this is done a form of receipt is enclosed, which the customer is asked to sign. The Comptroller contends that this receipt, if signed in Florida, is subject to a stamp tax as a memorandum of delivery.

The course of dealing upon an order for the sale of shares does not differ in essentials, so far as the present subject of inquiry is concerned, from that upon an order to buy. By concession the " exchange contracts," and the " sales tickets " are not taxable in Florida. Taxes are claimed, however, upon the telegraphic report of the sale when written out by employes in the Florida office or by them transmitted in writing to the Florida customer. Taxes are claimed also when the Florida branch delivers a receipt to the customer for certificates to be sold, or receives a written order to sell, the theory being that this last is an agreement to sell within the meaning of the statute.

If stamp taxes due in connection with any of these memoranda are not affixed when payable, they must be affixed, in the view of the Comptroller, to the corresponding entry upon the books of account, but the tax is payable only once in respect of the same transaction, duplicate documents or entries being held to be exempt.

The failure to pay the tax by affixing and cancelling stamps of the prescribed value is declared to be a crime and is punishable accordingly.

Upon these facts the District Court held that the complainants, who were nonresidents of Florida, were without an adequate remedy at law, and that the threatened acts of the Comptroller, if illegal, should be restrained by a court of equity. As to this we are not in doubt, the multiplicity of actions necessary for redress at law being sufficient, without reference to other considerations, to uphold the remedy by injunction. *Wilson* v. *Illinois Southern Ry. Co.,* 263 U.S. 574; *Hill* v. *Wallace,* 259 U.S. 44, 62. The taxes claimed by the Comptroller and resisted by the complainants exceed the amount necessary to sustain the federal jurisdiction. Several hundred transactions are affected every day.

The District Court held also (1) that the writings signed in Florida were not agreements or memoranda of sale or delivery within the meaning of the Florida statute; and (2) that the effect of a different construction would be to bring the statute into conflict with the Fourteenth Amendment. The two grounds are not sharply separated in the opinion of the District Court, the second being brought in to reinforce the first. We propose in what follows to keep them distinct.

*First.* The evidence drawn from the wording of the statute combines with the administrative interpretation of like statutes in other jurisdictions and with the practical interpretation of this one for nearly two years in Florida to exclude the transactions from the operation of the tax.

The scheme of the statute is to tax the transfer of shares of stock, whether executory or executed, by stamps to be affixed to those writings, and those only, which in a practical sense are the repository of the agreement or the instruments or vehicles for the ensuing change of title. Thus, if a transfer has been made and the only evidence of its making is on the books of the corporation, it is on such books and no where else that the stamps are to be placed.

The statute does not say or mean that they shall be placed also upon the memoranda of the transaction in the office of the brokers or that there shall be an election to affix them either at one place or the other. Again, " if the change of ownership is by transfer of the certificate " to a stated assignee, it is on the certificate and no where else that the stamps are to be placed. Only in two classes of cases is a different rule prescribed. " In case of an agreement to sell " (as distinguished from an executed transfer) " or where the transfer is made by delivery of the certificate assigned in blank," then a memorandum in a prescribed form must be executed by the seller, and this prescribed memorandum is the one to be stamped. In brief, the memorandum of sale or delivery to be taxed under the statute is not every note or entry made in Florida recording a transaction elsewhere. It is the kind of note or entry exacted by the statute where there is an executory agreement or a transfer by delivery, a note or entry to be handed by the seller to the buyer as an evidence of contract or as a muniment of title. If another view were to prevail, the tax could be multiplied repeatedly as the product of the same transaction. Not only the first memorandum would be taxable, but every copy of a copy, and every entry of the transaction in one book or in many. There is significance in the unwillingness of the Comptroller to press his claim so far. Refusing to concede that he is not at liberty under the statute to tax as many entries as he can find, he has none the less chosen in the administration of his office to tax the same transaction only once. The choice supplies a gloss upon the intention of the law makers. It is an illuminating token that the memoranda to be taxed are the mandatory memoranda only, the customary sales tickets of the brokers, tickets subject to a tax in Florida if ancillary to a transaction consummated there, but free from that burden if signed and delivered somewhere else. In this instance the sales

tickets were ancillary to a transaction consummated in New York, were signed and delivered in that state, and when signed and delivered carried stamps in the amount required by the laws of New York and the laws of the United States. We perceive nothing in the law of Florida indicative of a purpose that other memoranda, not the repository of the contract nor exchanged between the parties, should be subject to a tax anywhere.

One finds it hard, indeed, to see how the collection of the tax would be workable as an administrative problem if a broker were free to choose between stamping his own copy of a document and stamping the duplicate delivered as a memorandum to his customer. The taxing officials could never learn through an inspection of the files whether the mandate of the statute had been followed or ignored. One of the major merits of a stamp tax is to make the evidence of payment visible and almost automatic. That benefit is lost if the collector is uncertain whether the document to be stamped is on the files of the taxpayer or in the possession of another. A court will be slow to hold that the lawmakers had in view a method of collection so awkward and unwieldy. To tax every copy may be oppressive. To tax any one of them indifferently is ineffective. The intention of the lawmakers was to tax a particular set of documents identified with certainty.

Like statutes outside of Florida have had administrative interpretation pointing to a like conclusion. By § 270 of the Tax Law of New York, a stamp tax is imposed upon "all sales, or agreements to sell, or memoranda of sales and all deliveries or transfers of shares or certificates of stock . . . in any domestic or foreign association, company or corporation . . . whether made upon or shown by the books of the association, company, corporation or trustee, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or

other evidence of sale or transfer, whether intermediate or final. . . ." The Attorney General of New York has ruled that this statute does not apply to an assignment in blank in New York for delivery to a purchaser in Canada under a sale previously executed upon a Canadian exchange. Opinions of Attorney General 1928, p. 125. Cf. *People ex rel. Hatch* v. *Reardon,* 110 App. Div. (N.Y.) 821, 832, 97 N.Y.S. 535; aff'd 184 N.Y. 431, 77 N.E. 970; 204 U.S. 152. By a statute of the United States, Revenue Act of 1926, § 800, schedule A, subd. 3 as amended by the Revenue Acts of 1928 and 1932, 26 U.S.C. § 901 (3), a stamp tax is imposed upon sales or memoranda in almost the same words as those of the New York statute. Regulation No. 71, Article 36, of the Bureau of Internal Revenue, makes it clear that only the mandatory memorandum is required to bear a stamp. See also Article 35. Finally in Florida itself, the very statute now in controversy was ruled by the appellant's predecessor in the office of Comptroller to be inapplicable to these transactions or to others not to be distinguished. Counsel for the appellees, uncertain as to his clients' duty, put the case to the Comptroller, and received a favorable ruling. For nearly two years the statute was so administered till the present appellant, reaching out, it seems, for new sources of public revenue, found or thought he had found the evidence of an intention to tax a copy made in Florida of a memorandum in New York.

A word must be said in response to the suggestion that an order to sell, delivered by a customer in Florida to the manager of a Florida branch, is an agreement to sell, and therefore subject to the tax. Clearly, we think it is nothing of the kind. It is a grant of authority by customer to broker, by principal to agent, revocable till executed, like agencies in general. There was no agreement to sell till the selling broker and the buying one came to-

gether on the floor of the stock exchange in New York, and made a contract there.

The directive force of all these signposts of intention is little less than irresistible when the series is viewed together. The meaning ascribed to the statute by the judges of the court below gives it coherence and simplicity. The meaning read into it by the Comptroller splits it into jarring fragments, one a plan for the taxation of the operative documents, all executed in one place, and the other a plan for the taxation of casual reports and copies, executed in another. These plans, to be sure, might be held to coëxist if the purpose to combine them were unmistakably disclosed, yet disclosure short of that would be too weak to make the combination plausible. The Florida decisions tell us that doubts, if nicely balanced, will be resolved in favor of the taxpayer. *State ex rel. Packard* v. *Cook,* 108 Fla. 157; 146 So. 223; *State ex rel. Rogers* v. *Sweat,* 112 Fla. 797; 152 So. 432; cf. *Burnet* v. *Guggenheim,* 288 U.S. 280, 286. There is little need to summon to our aid that canon of construction invoked by the complainants. The meaning of the statute as we read it is too plain to be swayed by favor or disfavor for one class or another.

*Second.* The taxation of the documents being without warrant in the statute, there is no duty to determine whether the Constitution would be infringed if the meaning were something else. As to that we do not indicate an opinion, even by indirection. It will be soon enough to set a value upon the arguments of counsel when a statute is before us that requires us to choose between them. At the same time the parties to the controversy should have adequate protection in the possible contingency of a decision by the state Supreme Court at variance with ours in respect of the meaning of the statute, a meaning that will then be declared with ultimate authority.

426

*Hartford Accident & Indemnity Co.* v. *Nelson Mfg. Co.,* 291 U.S. 352. There should be an appropriate opportunity in such circumstances to terminate or modify the restraints of the decree. There should also be an opportunity to renew the litigation in respect of the issue of constitutional validity, now held to be irrelevant. The reservations proper to that end will follow the practice indicated in *Glenn* v. *Field Packing Co.,* 290 U.S. 177, and *Wald Transfer & Storage Co.* v. *Smith,* 290 U.S. 602.

In conformity with those decisions, the decree will be modified by striking therefrom any conclusion of law or other adjudication as to the validity of the Documentary Stamp Tax Act of Florida under the Constitution of the United States, and by adding a provision, that the parties to the suit or any of them may apply at any time to the court below, by bill or otherwise, as they may be advised, for a further order or decree, in case it shall appear that the statute has been then construed by the highest court of Florida as applicable to the transactions in controversy here. With this modification the decree will be affirmed.

*Decree modified and affirmed.*