**KINGAN & CO., Inc., v. SMITH, Collector of Internal Revenue.**

No. 1680.

District Court, S. D. Indiana, Indianapolis Division.

Sept. 30, 1935.

See, also (D. C.) 12 F. Supp. 328.

Thompson, Rabb & Stevenson, of Indianapolis, Ind., for complainant.

Val Nolan, U. S. Atty., of Indianapolis, Ind., for defendant.

BALTZELL, District Judge.

There are now pending in this court 72 suits in equity, each brought by a dif-

ferent complainant, and each being against the defendant Smith, as collector of internal revenue for the District of Indiana, wherein each complainant sought, and was granted, a temporary injunction enjoining the defendant, as such collector, "from imposing, levying, assessing, collecting or attempting to collect against or from the plaintiff any processing taxes under and pursuant to the Agricultural Adjustment Act," etc. For the complete text of this act and amendments, see 7 USCA § 601 et seq. Reference will, hereafter, in this memorandum, be made to the Agricultural Adjustment Act as "the act." The date of the first injunctions issued was July 2, 1935, such injunctions being issued by Judge Walter C. Lindley, after notice and hearing. The total number of 72 cases had not been filed at the time of the first hearing and the issuing of the first injunctions, but from time to time subsequent to the 2d day of July other suits were filed, and temporary injunctions were issued therein under the same conditions as those issued upon that date, the last being under date of August 23. Each of the injunctions thus issued was conditioned that the complainant deposit in a bank, or banks, the aggregate amount of taxes due by it and unpaid on account of the provisions contained in such act, and that it would thereafter deposit in such bank or banks the amount of taxes due each month. Such money thus deposited to be held by the bank or banks in a special deposit to the joint credit of the complainant and defendant, and to be paid out only upon the order of this court. It is further provided in the injunction order that "in the event it shall be finally determined by this court that the taxes sought to be imposed by the terms of the Agricultural Adjustment Act are valid and enforceable, then the money so deposited shall be ordered paid to the defendant, and in the event it shall be finally determined by this court that the taxes attempted to be imposed by the Agricultural Adjustment Act are invalid and unconstitutional, then said sums of money shall be returned to the plaintiff," etc. This condition was imposed in each case in which an injunction was issued; however, in the case of Dryfus Packing Company v. Smith, Collector, in Equity No. 1682, there was a further provision in the order that "said defendant Collector is not and shall not be enjoined from proceeding by distraint or other process or remedy against the real estate and buildings of said plaintiff, but no sale shall be made by said Collector of any property so distrained without the further order of this court first had and obtained." In the instant case there was due and unpaid by the complainant processing taxes under the act in the sum of $1,154,066.53 at the date of the issuance of the injunction. Such sum was paid by the complainant into a bank or banks as conditioned in the injunctive order and is held therein at this time. At the time of the hearing upon the supplemental bill the additional sum of $426,194.69 had been deposited by the complainant in such bank or banks, in accordance with such order.

Subsequent to the 24th day of August, the date of the approval of the amendment to the act, there have been filed in this court 3 additional suits in equity wherein 3 separate complainants are seeking to temporarily enjoin the collection of taxes under the amended act upon grounds similar to those asserted in the suits filed by the 72 other complainants. No action has been taken upon the petitions of these 3 complainants for a temporary injunction. In the instant case a supplemental bill of complaint was, by leave of court, filed on August 30th, challenging the validity of the act as amended, and seeking the continuance of the temporary injunction heretofore issued. Practically identical supplemental bills have been filed in 70 other suits in which temporary injunctions had been issued prior to the approval of the amendments. No supplemental bill has yet been filed in the case of Metropolitan Cigar Company, a Corporation, v. Smith, Collector, In Equity No. 1735, although a temporary injunction was granted under the original bill and leave given to file a supplemental bill. Applications upon complainant's supplemental bill of complaint, and upon each of the 70 other supplemental bills of complaint for the issuance of a temporary injunction in substance to continue in effect, under the act as amended, the temporary injunctions heretofore granted, and now in effect, were presented to the court on the 18th day of September. At the same time there were presented to the court the applications of the various complain-

332

ants in the 3 cases filed since the enactment of the amendments for temporary injunctions.

The defendant filed a motion to dismiss the original bill in the instant case, as well as a motion to dismiss the original bill in each of the several cases pending, which motion was overruled by Judge Lindley on August 23rd, and a memorandum opinion filed by him upon that date [(D. C.) 12 F. Supp. 328]. The memorandum opinion stated that "the motion to dismiss be denied at this time, without prejudice, however, to defendant's right to raise all grounds relied upon therein in its defense upon the merits, or to renew the same hereafter, should the circumstances so change as to make it obvious that the court should not longer entertain jurisdiction." An order was entered in accordance with such memorandum opinion. On the 4th day of September the defendant filed a motion to dismiss the supplemental bill in the instant case upon the grounds that the court is without jurisdiction to restrain or enjoin the collection of the taxes herein involved. A similar motion was filed by the defendant to dismiss each of the 70 other supplemental bills, as well as a motion to dismiss each of the cases in which no supplemental bill had been filed. It is contended by the defendant, first, that both section 3224 of the Revised Statutes of the United States (26 USCA § 154 [see 26 USCA § 1543]) and section 21 (a) of the amended act, 7 USCA § 623 (a), prohibit the maintaining in any court of a suit for the purpose of restraining the assessment or collection of a federal tax; and, second, that the complainant has a plain, adequate, and complete remedy at law. Other reasons are assigned for the sustaining of the motion, but these two are the principal ones, and are the ones that challenge the serious consideration of the court. Upon the same day, September 4th, the defendant also filed in each case wherein a temporary injunction had theretofore been issued a motion to dissolve such injunction. The reasons assigned by the defendant for the dismissal of the bills and supplemental bills, and for the dissolution of the injunctions, are substantially the same, and, therefore, may well be considered together. The language in this memorandum will hereafter be addressed to the instant case, and the memorandum will be filed therein, but will apply equally, however, to each of the pending cases in which the same questions are presented.

█ It is the contention of the complainant that the act, as amended, is invalid, and that it contravenes certain provisions of the Constitution of the United States. It is further contended that it has no adequate remedy at law, hence it is invoking the protection of a court of equity. It is not contended by complainant that it is entitled to the protection of such court, however, if, in fact, it has a plain, adequate, and complete remedy at law, even though the act in question is unconstitutional. It must be kept in mind that the questions presented are not upon final hearing, but are presented at a stage in the proceeding where temporary relief is sought. Upon final hearing, one averring the invalidity or unconstitutionality of a statute must not only prove such averments, but he must also prove that he will suffer an irreparable loss, and that he has no adequate remedy at law, before he can proceed in a court of equity. This being a hearing upon the application for a temporary injunction, the same degree of proof is not required as upon a final hearing. See Prendergast v. New York Telephone Company, 262 U. S. 43, 43 S. Ct. 466, 67 L. Ed. 853; Ohio Oil Company v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. 972.

█ There is always a presumption of the validity of a statute, and that presumption must obtain as to the validity of the amended act under attack in this case. A court always hesitates to declare invalid an act of the legislative branch of our government and will not do so unless no reasonable doubt exists as to its invalidity, after opportunity is afforded for a careful and painstaking examination of all questions pertaining thereto. Upon a hearing where temporary relief is sought, the question of relief is paramount, and ordinarily must be determined expeditiously. An opportunity must be afforded the court in the instant case to make a thorough research before passing finally upon the validity of the act. This is especially true in view of the fact that various courts have expressed different views upon that question, and its validity has been attacked in many jurisdictions. In the case of Butler et al. v. United States of America, 78 F.(2d) 1, the Circuit Court of Ap-

peals for the First Circuit has held the act invalid. This is the only Circuit Court of Appeals that has spoken directly upon the question, and the case is now pending upon petition of the government to the Supreme Court of the United States for a writ of certiorari. At least one other Circuit Court of Appeals (Ninth) has, since the approval of the amended act, issued an injunction to stay proceedings pending an appeal. Merchants' Packing Co. v. Rogan, 79 F.(2d) 1. This same court had, however, previous to the approval of such amended act, denied the same relief in 3 cases where the District Court of the state of Washington had denied a temporary injunction (Fisher Flouring Mills Co. v. Vierhus, 78 F.(2d) 889). The Fifth Circuit Court of Appeals also recently denied an injunction, pending appeal. Jose Escalante & Co. v. Fontenot, 79 F.(2d) 343. In the case of Gebelein, Inc., v. Milbourne, Collector, the District Court of Maryland held the act invalid on the 13th day of August, 1935, 12 F. Supp. 105. It is not necessary, in a hearing upon a petition for a temporary injunction, to determine the validity or constitutionality of the act in question, and this court does not decide that question in this hearing. It is sufficient to say that the reasoning adopted in the opinion of the highest court that has thus far spoken upon the subject (Butler et al. v. United States of America, supra) is logical and somewhat persuasive. The arguments presented by counsel for the various complainants in this court against its validity are forceful and are entitled to serious consideration. An entirely opposite view may be

entertained, however, as to the persuasiveness of such opinion, and as to the forcefulness of such arguments, after an opportunity is afforded for more deliberate consideration and further research. It is apparent, however, that further consideration of that question must be deferred until the time of final hearing upon the merits. This is especially true, since the Supreme Court has not yet passed upon its validity, and a case is now pending which may receive the attention of that court within a short time.

Having reached this conclusion, the court must answer the question of whether or not a court of equity can enjoin the assessment or collection of a federal tax in view of section 3224 of the Revised Statutes, which section reads as follows: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 USCA § 154 (see 26 USCA § 1543). In addition to the prohibition contained in section 3224, supra, it is the contention of the defendant that, under the provisions of section 21 of the Agricultural Adjustment Act, as amended, 7 USCA § 623 (approved August 24, 1935), this court has no power to enjoin the collection of the taxes imposed by the act, and, further, that the complainant is given an adequate remedy at law by the provisions of such amendment. The provisions of the act, as amended, which seek to prevent the maintenance of any suit to restrain the assessment or collection of any tax imposed by the act, and which provide for the allowance of a refund under certain conditions, are found in the footnote below.[1]

[1] "Sec. 21. (a). No suit, action, or proceeding (including probate, administration, receivership, and bankruptcy proceedings) shall be brought or maintained in any court if such suit, action, or proceeding is for the purpose or has the effect (1) of preventing or restraining the assessment or collection of any tax imposed or the amount of any penalty or interest accrued under this title [chapter] on or after the date of the adoption of this amendment [August 24, 1935], or (2) of obtaining a declaratory judgment under the Federal Declaratory Judgments Act [section 400 of Title 28] in connection with any such tax or such amount of any such interest or penalty. In probate, administration, receivership, bankruptcy, or other similar proceedings, the claim of the United States for any such tax or such

amount of any such interest or penalty, in the amount assessed by the Commissioner of Internal Revenue, shall be allowed and ordered to be paid, but the right to claim the refund or credit thereof and to maintain such claim pursuant to the applicable provisions of law, including subsection (d) of this section, may be reserved in the court's order. * * *

"(d) (1) No recovery, recoupment, set-off, refund, or credit shall be made or allowed of, nor shall any counter claim be allowed for, any amount of any tax, penalty, or interest which accrued before, on, or after the date of the adoption of this amendment [August 24, 1935] under this title [chapter] (including any overpayment of such tax), unless, after a claim has been duly filed, it shall be established, in addition to all other facts required to be

It is also the contention of the defendant that a court of equity has no power to enjoin the collection of taxes, especially in view of section 3224, supra, which has been upheld by the Supreme Court of the United States in several instances. Snyder v. Marks, 109 U. S. 189, 3 S. Ct. 157, 27 L. Ed. 901; Dodge v. Osborn, 240 U. S. 118, 36 S. Ct. 275, 60 L. Ed. 557; Bailey v. George, 259 U. S. 16, 42 S. Ct. 419, 66 L. Ed. 816; Graham v. Dupont, 262 U. S. 234, 43 S. Ct. 567, 67 L. Ed. 965. As early as the case of Dows v. City of Chicago, 11 Wall. 108, 110, 20 L. Ed. 65, it was held that a suit in equity will not lie to restrain the collection of a tax upon the sole ground that the tax is illegal. In speaking of such an action against taxing officials to enjoin them from performing their official duties—that of collecting taxes—the court said: "No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury," etc. The provision contained in section 3224, supra, was said by the Supreme Court of the United States, in the case of Miller, Collector, v. Standard Nut Margarine Company of Florida, 284 U. S. 498, 52 S. Ct. 260, 264, 76 L. Ed. 422, to be declaratory of the principle or equitable rule firmly established long prior to its enactment, that is, that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. This rule has been established and enforced long prior to the enactment of the provision (Act of March 2, 1867, § 10, 14 Stat. 475) which became section 3224 of the Revised Statutes. In the language of the Supreme Court, in the case of Miller, Collector, v. Standard Nut Margarine Company, supra, "Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests." Cumberland Telephone & Telegraph Company v. Kelly (C. C. A. 6th) 160 F. 316, 15 Ann. Cas. 1210. The wisdom of this rule is readily recognized. If it were possible to enjoin the collection of every tax of which complaint is made by a taxpayer, the government might soon find itself embarrassed in having insufficient revenues upon which to operate. There may, however, be circumstances, aside from the averred invalidity of a statute, which will justify the interposition of a court of equity. This principle is as firmly established as is the rule prohibiting such interposition. As was said in the case of Miller, Collector, v. Standard Nut Margarine Company, supra, "this court likewise 'recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exists special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector." It is reasonable to conclude that the principle announced in that case (Miller, Collector, v. Standard Nut Margarine Company, supra) will apply to the provisions of section 21 (a) supra, the same as to section 3224, supra. The court is, therefore, confronted with a solution of the problem of whether or not there is shown, by the evidence in this case, the

established, to the satisfaction of the Commissioner of Internal Revenue, and the Commissioner shall find and declare of record, after due notice by the Commissioner to such claimant and opportunity for hearing, that neither the claimant nor any person directly or indirectly under his control or having control over him, has, directly or indirectly, included such amount in the price of the article with respect to which it was imposed or of any article processed from the commodity with respect to which it was imposed, or passed on any part of such amount to the vendee or to any other person in any manner, or included any part of such amount in the charge or fee for processing, and that the price paid by the claimant or such person was not reduced by any part of such amount. In any judicial proceeding relating to such claim, a transcript of the hearing before the Commissioner shall be duly certified and filed as the record in the case and shall be so considered by the court. The provisions of this subsection shall not apply to any refund or credit authorized by subsection (a) or (c) of section 15 [section 615], section 16 [section 616], or section 17 [section 617] of this title, or to any refund or credit to the processor of any tax paid by him with respect to the provisions of section 317 of the Tariff Act of 1930 [section 1317 of Title 19]."

existence of any special or extraordinary circumstances which are "sufficient to bring the case within some acknowledged head of equity jurisprudence."

The only evidence introduced at the hearing upon the application of the complainant for a temporary injunction was the notice of the application, the original verified bill, and the verified supplemental bill. The defendant neither offered nor introduced any evidence to refute the allegations contained in either the original bill or the supplemental bill. It is disclosed, from the evidence, that the complainant is a corporation engaged in the meat packing business; that it has slaughtering houses and packing plants located in the cities of Indianapolis, Ind., and Richmond, Va.; that it has been engaged in such business for more than twenty years, and that it slaughters more than 1,000,000 hogs annually. Under the provisions of the act in question the complainant is required to pay approximately $400,000 processing tax per month, or $4,750,000 annually. If such taxes are not paid when due, the complainant will be subjected to drastic penalties, as provided in the act. The complainant has on hand at all times a large stock of commodities, money in bank, etc., and if levies are made by the defendant and distraint of its property from month to month, in the event of its failure to pay such taxes when due, great and irreparable damage will result to its good will, and it will be otherwise greatly damaged in its business. In the purchase of hogs for slaughter, the complainant has, in the past, and will, in the future, pay the competitive open market price in effect at the time of the purchase. Such price is always governed by the market conditions in respect to supply, demand, and competition. The processing tax paid upon any commodity which complainant buys is only one of the many factors affecting the market price thereof at any one time. The product handled by it is necessarily perishable in character, and because of this fact, it is often required to sell a part of it at a loss, while it may, and does, make a profit on another part. Many commodities may be processed from a single hog upon which a processing tax was levied and paid at the time of the processing. The supplemental bill contains lengthy allegations as to the manner in which the business of complainant is conducted. It details at great length the reasons for the conclusion that it is an impossibility for the complainant, or any one else, to determine whether or not it has absorbed the taxes, and that the amount of such taxes is not included in the sale price, or whether or not it has passed the same on to the purchaser, and hence has, in reality, had a refund of such taxes from such purchaser. These allegations remain uncontradicted and unchallenged. It would seem that the government, with all the tax experts at its command, would have introduced evidence to have refuted these allegations, if, in fact, they are not true. Therefore, this court is justified, for the purpose of this hearing, in accepting such allegations as true, and it is its duty so to do.

It is contended by the complainant, first, that there are "special and unusual circumstances," as shown by the evidence, which exclude it from the restrictions contained in section 3224, supra, and likewise from section 21 (a) of the amended act; and, second, that in no event does it have a plain, adequate, and complete remedy at law. If the taxes are paid, as provided in the act, and the complainant seeks a refund, it must first file a claim with the Commissioner of Internal Revenue. The burden is then upon it to "establish, in addition to all other facts, to the satisfaction of the Commissioner of Internal Revenue, and the Commissioner shall find and declare of record, after due notice by the Commissioner to such claimant and opportunity for hearing, that neither the claimant nor any person directly or indirectly under his control or having control over him directly or indirectly, included such amount in the price of the article with respect to which it was imposed * * * or passed on any part of such amount to the vendee or to any other person in any manner," etc. If it is not satisfied with the decision of the commissioner, provision is made for a judicial proceeding in which the transcript of the hearing before the commissioner shall be duly certified and filed as the record in the case and so considered by the court. It is clear, from the amendment, that before the complainant can recover in an action at law it must go further than to prove that it paid a certain tax under an invalid stat-

ute. Does the amended act exact from the complainant proof which it is impossible for it to obtain, before it can prevail in an action at law? Is it possible, under the facts in this case, for it to establish that it did not pass the tax on to the vendee? The provisions of this act are not analogous to those of the Revenue Act of 1928 (45 Stat. 791) providing for a refund of Automobile Accessories Tax, wherein the right to a refund is contingent upon the dealer not having collected such tax from the purchaser, or, if collected, was returned. That was an excise tax levied at the time of the sale, and it was a very simple matter to determine whether or not such tax was included in the sale price. A casual examination of the inventory would disclose that fact. Furthermore, that act makes express provision for the substitution of a bond in lieu of proof that the claimant had himself paid such tax and not passed it on to the vendee. The amended act in question contains no such provision. It appears, from the amended act, that in any judicial proceeding, after the commissioner may have rejected 'a claim for a refund, the complainant is limited in the presentation of the case in the court to the record of the proceedings before the commissioner. No provision is made in the amended act for a trial de novo by a court, as was provided in the Senate Amendment. By reference to the debates upon the floor of the Senate, it will appear that this proceeding (a trial de novo by the court) was insisted upon by many of the Senators. Since the commissioner is an administrative officer and "generally is disposed to construe an act favorably to the Government," as was said by one Senator in the discussion, it was deemed wise to provide for a trial de novo in the amendment, and it was so provided by the Senate, but stricken by the Conference Committee. Some doubt may exist as to whether this judicial procedure constitutes an adequate remedy at law. Many instances of similar legislation, however, are found to have been sustained by the courts, in the absence of fraud, or in the absence of a showing that the hearing was clearly arbitrary and capricious. See Passavant v. United States, 148 U. S. 214, 13 S. Ct. 572, 37 L. Ed. 426; Long Island Water-Supply Co. v. City of Brooklyn, 166 U. S.

685, 17 S. Ct. 718, 41 L. Ed. 1165; Bates & Guild Co. v. Payne, 194 U. S. 106, 24 S. Ct. 595, 48 L. Ed. 894; Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341; Hardware Dealers' Mutual Fire Ins. Co. v. Glidden Co., 284 U. S. 151, 52 S. Ct. 69, 76 L. Ed. 214; Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. In the case of Chicago & Northwestern Railway Company v. Osborn, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878, cited by the complainant, the board was charged with having acted arbitrarily.

If the complainant is required to pay the tax, and, in the event this act should finally be declared to be invalid, seek a refund, it must, under the amended act, prove to the satisfaction of the commissioner, that the taxes were not passed on to its vendee, but were actually paid and absorbed by it. The animals processed by the complainant are purchased upon a market which we all know fluctuates from day to day, and the commodities processed therefrom are disposed of upon the same fluctuating market. After a hog has been processed, the product obtained therefrom is represented by many different commodities that are sold upon the open market. For example, there may be, and are, processed from a single hog many different products or commodities, such as ham, bacon, spare ribs, backbone, brains, lard, pigs feet, etc., each of which may appear upon a different market, and the price received for each is governed by the market price thereof. The complainant may sell some of its commodities at a profit, which it must do, if it is to long remain in business, but, can it be said that such taxes are included simply because it sells at a profit. On the other hand, it may sell upon a declining market and at a loss. In such a case, can it be said that the absorption of such tax was the cause of the loss? It requires evidence to establish a fact in any case, and the uncontradicted evidence in this case establishes the fact that the complainant cannot prove the things required under the amended act to entitle it to a refund. As was said by Judge Hincks, in the case of Baltic Mills Company v. Bitgood, 12 F. Supp. 132, Collector, the processor who pays the tax "is as helpless as his competitor who has passed the tax along."

Another principle must not be overlooked or considered lightly, and that is the question of a multiplicity of suits. Many revenue measures provide for the payment of taxes quarterly, semiannually, or annually. The act in question, however, provides for payment monthly, and unless the taxes are paid when due, the taxpayer is subjected to heavy penalties. It is true, of course, that a person subject to the payment of taxes under the act could pay several months or perhaps years and combine all payments in one suit for a refund. This procedure, however, does not appeal to the conscience of a chancellor. On the other hand, it would seem rather burdensome to require him to file 12 lawsuits in one year. In the case of Lee, Comptroller, v. Bickell et al., 292 U. S. 415, 54 S. Ct. 727, 730, 78 L. Ed. 1337, the court said, "the multiplicity of actions necessary for redress at law being sufficient, without reference to other considerations, to uphold the remedy by injunction." See Clark v. Pigeon River Improvement Slide & Boom Company, 52 F.(2d) 550 (C. C. A. 8th).

The only legal remedy available is surrounded by such limitations, and the circumstances are so extraordinary that this case comes clearly within the rule announced in the case of Miller, Collector, v. Standard Nut Margarine Company, supra, and requires the interposition of a court of equity in extending temporary relief until a final hearing may be had upon the merits. See, also, Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; Lee v. Bickell et al., supra; Dows v. City of Chicago, supra.

There has been paid into the various banks, under the conditions of the order heretofore entered, by all of the complainants protected by such order, approximately $3,000,000, and such sum will be available to the defendant, in the event the act is declared valid upon final hearing. It seems that the equity is so clearly with the complainant that it cannot be seriously controverted. If the act is finally declared valid, the government loses nothing. If it is found to be invalid, the government is not harmed. See Indiana General Service Company v. McCardie et al. (D. C.) 1 F. Supp. 113; Prendergast v. New York Telephone Company, supra; Ohio Oil Company v. Conway, supra.

The motions of the defendant to dismiss the supplemental bills and to dissolve the injunction in each of the 72 cases in which such motions are filed will be overruled, and the application of the complainants for a continuance of the temporary injunctions granted, upon the same conditions as those contained therein. The motions to dismiss the bills in the 3 cases wherein no injunctions have been issued will likewise be overruled, and the application for a temporary injunction in each of those cases will be sustained, conditioned as in the injunctions now in force in the other cases.

An entry will be prepared accordingly.