GREEN, Chairman of Iowa State Board of Assessment and Review, et al. v. PHILLIPS PETROLEUM CO.

No. 11873.

Circuit Court of Appeals, Eighth Circuit.

May 9, 1941.

John E. Mulroney, Asst. Atty. Gen. of Iowa (John M. Rankin, Atty. Gen. of Iowa, on the brief), for appellants.

Paul J. Parker, of Des Moines, Iowa (Don Emery, R. L. Foster, and Walter L. Barnes, all of Bartlesville, Okl., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by the Iowa State Board of Assessment and Review from a decree which determines that the Iowa Chain Store Tax Act (c. 75, Laws of the 46th General Assembly of Iowa, as amended; §§ 6943.126 to 6943.141, Code of Iowa, 1939) is inapplicable to seventy-three bulk plants of the Phillips Petroleum Company, a Delaware corporation authorized to do business in Iowa, at which plants the Company's wholesale driver plan of operation is in effect. The decree enjoins the appellants from assessing against or exacting or collecting from the Phillips Petroleum Company any chain store tax on account of its operation of these bulk plants during the period from July 1, 1935, to June 30, 1940.

The Iowa Chain Store Tax Act was approved April 29, 1935. It imposed a graduated tax, dependent upon the number of units operated in Iowa, upon every person within that State engaged in "conducting a business by a system of chain stores" from any of which stores were sold or other-

wise disposed of at retail goods, wares and merchandise. The Act carried its own glossary. The following definitions are found in Sec. 2 of the Act (§ 6943.127, Code of Iowa, 1939):

"d. 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for resale, of tangible personal property including goods, wares and merchandise."

"f. 'Store' means any store or stores, or any mercantile or other establishment in which tangible goods, wares or merchandise of any kind are sold or kept for sale at retail.

"g. 'Conducting a business by a system of chain stores' when used in this act shall be construed to mean and include every person, as defined in this act, in the business of owning, operating or maintaining, directly or indirectly, under the same general management, supervision, control or ownership in this state, and/or in this state and any other state, two or more stores, where goods, wares, articles, commodities, or merchandise of any kind whatsoever are sold or offered for sale at retail and where the person operating such store or stores receives the retail profit from the commodities sold therein. * * *"

The Act further provided that the Iowa Board of Assessment and Review should administer it and assess the tax imposed.

A controversy arose between the Board and certain of the foreign oil companies doing business in Iowa over whether—and to what extent, if any—the operation of their bulk plants in Iowa, to which they shipped, at which they stored, and from which they distributed petroleum products, subjected them to the tax imposed by the Act. On May 28, 1936, the Standard Oil Company brought this action against the Iowa State Board of Assessment and Review in the court below, alleging that the Act was violative of the Constitution of the United States and was inapplicable to the Company's bulk plants in the State of Iowa, and praying for a temporary and a permanent injunction against the enforcement of the Act by the Board. The Phillips Petroleum Company, which maintained and operated bulk plants in the State of Iowa, intervened, together with twelve other oil companies similarly engaged in business in that State. Issues were joined. On February 10, 1940, a consent decree was entered, which had the effect of determin-

ing the controversy and of fixing the tax liability of each of the oil companies, parties to the action, so far as the operation of their ordinary bulk plants in the State of Iowa was concerned. The consent decree disposed of all of the issues as to all of the parties excepting the issue of the applicability of the Chain Store Tax Act to seventy-three of the bulk plants of the Phillips Petroleum Company at which a wholesale driver plan of operation prevailed.[1]

It was asserted by the Company that these bulk plants, as maintained and operated by it, were not chain stores; that the sales of goods distributed therefrom were not retail sales; that no sales were made on the premises; that the Company did not receive the retail profit; and that, with respect to such plants, it was not engaged in conducting a business by a system of chain stores.

█ The action as originally commenced was one required to be heard by a court of three judges under § 266 of the Judicial Code, 28 U.S.C.A. § 380, and, for that reason, the consent decree was signed by the three judges who were assigned to try the case. It was contemplated that the issue reserved would be for trial before a court consisting of the same three judges. On May 29, 1940, the statutory three-judge court convened in the city of Des Moines to try this issue. It then became apparent that no question of the constitutionality of the Iowa Chain Store Tax Act remained in the case, and that the only issue left was whether the Act was applicable to the Phillips Petroleum Company with respect to the seventy-three bulk plants operated under the wholesale driver plan. That being the situation, § 266 of the Judicial Code was no longer applicable (Ex Parte Bransford, 310. U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249), and the case was tried before and decided by the Judge of the United States District Court for the Southern District of Iowa. The trial court recognized that the question presented was debatable, but concluded that, under the rules of construction applicable to taxing statutes, the Iowa Chain Store Tax Act did not apply to the operations at the bulk plants in suit.

The record shows that the only basis for jurisdiction was diversity of citizenship; that no question of the right of the court to try the issue reserved in the consent decree was raised; that no request was made that that court stay proceedings so that the issue might be determined in the State courts of Iowa. The parties had agreed that the case be tried by the court below, and the consent decree provided that: " * * * as to such bulk plants at which a wholesale driver plan of operation prevailed as stated above, the said Phillips Petroleum Company and the defendants (appellants) shall, before May 1, 1940, present to this Court evidence taken in accordance with the provisions of this decree relating to the applicability of the Iowa Chain Store Tax Act, Chapter 75 of the Acts of the Forty-Sixth General Assembly of Iowa, to such bulk plants, upon which evidence the Court shall decide whether or not the said bulk plants at which there prevailed a wholesale driver plan of operation, as stated above, are bulk plants upon which the said Phillips Petroleum Company is bound by the terms of said Act to pay a chain store tax thereon, said question to be decided independently of the provisions of this decree, and that the same shall be included without penalties or interest or excluded from the number of units to be taken as the measure of the liability of the Phillips Petroleum Company pursuant to said Chain Store Tax Act in accordance with the decision of the Court thereon."

The question with which we are now confronted is whether, in view of the decision of the Supreme Court in Railroad Comm'n of Texas v. Pullman Co., 61 S.Ct. 643, 85 L.Ed. ——, the court below could determine the issue presented to it, and whether this Court has any alternative other than to remand the case.

█ The action is in equity, and its purpose is to enjoin the appellants, who are State officers, from enforcing a taxing statute of the State of Iowa which they regard as applicable to certain of the operations of the Phillips Petroleum Company at the bulk plants in suit. The sole question presented is one of Iowa law, as to which neither the Supreme Court of Iowa nor any other court of that State has ruled.

---

[1] This plan involved sales of petroleum products by the bulk plant agent of the Company to a tank wagon driver, allegedly not an employee of the Company, at wholesale prices, and resales of such products by the driver to the ultimate consumer at retail prices.

There is no available data as to what the applicable State law upon this subject is. See West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 183, 85 L.Ed. —, 132 A.L.R. 956. The last word on the meaning of the Act and on its applicability to the operation of bulk plants such as those in suit belongs to the Supreme Court of Iowa. Therefore, in invoking a decision by the court below and a decision of this Court upon this debatable question of Iowa law, the parties were calling for forecasts rather than determinations. "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. Glenn v. Field Packing Co., 290 U.S. 177, 54 S.Ct. 138, 78 L.Ed. 252; Lee v. Bickell, 292 U.S. 415, 54 S.Ct. 727, 78 L.Ed. 1337. The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court." Railroad Comm'n of Texas v. Pullman Co., supra, page 645 of 61 S. Ct. This decision of the Supreme Court requires, as we understand it, in a case such as this—where the question upon which the case turns is one of state law as yet undetermined by the courts of the state and affecting an important state policy such as that of taxation—that the federal district court as a court of equity must, in the exercise of a wise discretion and because of " 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary" (Id., page 645 of 61 S. Ct.), stay its hands, provided that the situation is such that a definitive determination of the issue of state law may be obtained by the parties through recourse to the state courts. We gather that the exercise of this discretion is a matter of judicial policy which can not be controlled by the wishes or agreements of the parties litigant.

■ That recourse may be had to the courts of Iowa by the parties, for the pur-

pose of securing a definitive ruling, is obvious. The Phillips Petroleum Company is authorized to do business in Iowa. It can apply to the courts of that state for an injunction to prevent the appellants from assessing or collecting the tax which it claims that it does not owe. The appellants, on the other hand, can bring an action in state court for the collection of the tax which they claim is owing.

While the court below, at the time this case was presented for trial,[2] could not reasonably have been expected to refrain from trying it, since the parties were asking that it be tried, as provided in the consent decree entered at their request, it now appears that the court should merely have retained jurisdiction of the action and should, before proceeding further, have required the parties to seek a definitive ruling in the state court.

Since the record made in the court below appears to be adequate and complete, it should be possible for the parties to cooperate in securing promptly and with little additional expense a definitive ruling from the courts of Iowa upon the issues of law presented. To avoid any possible controversy over the similarity of the issues which were tried in the federal court and the issues which are to be tried in state court, we think that no issues not raised in the federal court should be raised in the state court and that so far as possible the case should be submitted to the state court for determination upon the same state of facts and subject to the same stipulations and agreements of the parties as conditioned the trial and determination of the case in federal court.

Upon the authority of Railroad Comm'n of Texas v. Pullman Co., supra, we remand this case to the court below, with directions to retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion.

Reversed and remanded.

[2] The case of Railroad Comm'n of Texas v. Pullman Co., 61 S.Ct. 643, 85 L. Ed. —, was decided March 3, 1941, just before the instant action was first argued in this Court.