## CHESAPEAKE & O. RY. CO. v. HOEY, Collector of Internal Revenue.

### No. 144.

Circuit Court of Appeals, Second Circuit.

Argued Jan. 16, 1942.

Decided Feb. 4, 1942.

Mathias F. Correa, U. S. Atty., of New York City (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellant.

White & Case, of New York City, and J. C. Kauffman, of Cleveland, Ohio (Russell D. Morrill, of New York City, and John S. Marshall, of Cleveland, Ohio, of counsel), for plaintiff-appellee.

Before SWAN and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Chesapeake and Ohio Railway Company brought this action against a Collector of Internal Revenue for a refund of stamp taxes amounting to $15,292 paid on January 31, 1938, on the transfer to it of 167,300 shares of common stock of the New York, Chicago & St. Louis Railroad Company and 215,000 shares of common stock of the Erie Railroad Company of the par value of $100 per share.

The transfer on January 31, 1938, was made in pursuance of a so-called "Option Agreement" between Allegheny Corporation, as seller, and the Chesapeake and Ohio Railway Company as buyer, dated February 1, 1932, and an Amending Agreement made on February 1, 1936. Under both the original and the amended agreement the buyer, which we shall hereafter call the Railway, was to pay the cost of all revenue stamps required in connection with agreements. Prior to the transfer of stock on January 31, 1938, documentary stamps had been put on the original agreement to sell and also on a transfer to a depositary which held the shares to secure the performance of the agreement.

The railway claims the right to a refund on the ground that a tax had already been paid on the contract under which it

acquired the right to receive the shares. The Collector insists that the Amending Agreement was a new agreement differing from the original Option Agreement and as such was taxable. The court below granted the refund. We think that the judgment was right and should be affirmed.

Section 800, Schedule A-3 of Title VIII of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Code, § 1802(b) imposes stamp taxes as follows: "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subdivision 2 [subsection (a)], or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not). * * *"

The question is whether the Amending Agreement we have mentioned constituted a new agreement to sell within the meaning of Section 800, supra, and was therefore subject to a documentary stamp tax.

It is plain from the provisions of Section 800, Schedule A, subd. 3, above quoted, that only one tax is imposed upon a single transaction whether it be an agreement to sell or the resultant sale. The Original Agreement here was far more than a mere option for the Railway was required to and did deposit 67% of the purchase price with a depositary and agreed with Allegheny that if the former did not purchase all the stocks the depositary should sell them at the request of the buyer and should pay Allegheny the amount of any deficiency. The original agreement was to expire February 1, 1936, but its expiration would not have terminated the taxpayer's right. The Amending Agreement which was executed before the date of expiration of the former one did little more than extend the period within which the Railway might acquire the stock upon its depositing further cash security. At no time was the right of Allegheny to sell the stock lost. It could always force the Railway to take the stock or pay the balance of the purchase price after what amounted to a foreclosure of Allegheny's lien. The new agreement gave the Railway more time to pay for the shares without being subject to foreclosure for failure to take them under the first contract.

Article 35 of Regulations 71 moreover expressly exempts from stamp taxes "(a) the transfer of stock pursuant to a sale, where the previous memorandum of sale has been duly stamped."

This article seems to us applicable and the decision of the Supreme Court in Lee v. Bickell, 292 U.S. 415, 54 S.Ct. 727, 78 L.Ed. 1337, where a similar Florida tax was involved furnishes a close analogy.

It is unreasonable to suppose that every amendment of a contract to sell certificates of stock requires an additional stamp tax. If a tax upon an extension of the time of performance had been intended there surely would have been a special provision to that effect like the clause in Section 1801 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1801, which taxes "every renewal" of a bond which matures.

It is unnecessary for us to say whether there would have been a second tax even if the contract had been a mere option and the second option had embraced the same securities, contained the same price offer and amounted practically to no more than an extension of the first. It is to be observed in this connection that the object of taxing contracts to sell as well as transfers was to prevent attempts of parties to escape the tax by trades which required no transfers to carry them out. See remarks of Senators Bacon and Aldrich in Congressional Record, Vol. 31, Part 5, page 5028 et seq.

Judgment affirmed.