588 F.2d 778
 WESTERN FOOD PLAN, INC., a Utah Corporation, Plaintiff-Appellant,
v.
J. D. MacFARLANE, Colorado Attorney General, and D. P.
Cronin, Manager of Safety and Ex-Officio Sheriff
of the City and County of Denver,
Defendants-Appellees.
 No. 77-1343.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Sept. 26, 1978.
Decided Dec. 4, 1978.
 
 John M. Cogswell and Phyllis Cox Werkman of Cogswell, Chilson, Dominick & Whitelaw, Denver, Colo., for plaintiff-appellant.
 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Mary J. Mullarkey, First Asst. Atty. Gen., Appellate Section, and David K. Rees, Asst. Atty. Gen., Appellate Section, Denver, Colo., for defendants-appellees.
 Before DOYLE and LOGAN, Circuit Judges, and STANLEY,* Senior District Judge.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 Western Food Plan, Inc. brought an action in the District Court seeking injunctive relief and damages pursuant to 42 U.S.C. § 1983. The complaint alleges that the Attorney General, defendant in the case, filed a consumer action in state court pursuant to C.R.S.1973, § 6-1-101 Et seq. and brought about the issuance of a writ of attachment in that suit against the Micron Corporation, which is a subsidiary or parent, it is not clear which, of Western Food Plan.
 
 
 2
 The thrust of the § 1983 action by Western Food Plan is that a writ of attachment was issued at the behest of the Attorney General against the assets of Micron Corporation. It is further alleged that Western Food as a successor of Micron has a substantial interest in the Micron Corporation and that it was thus damaged by the action taken. Indeed the Micron Corporation is alleged to have collapsed as a result of the seizure.
 
 
 3
 The legal theory of the suit here is that attachment in aid of suit which resulted from the seizure of the assets was invalid in that the rule under which it was issued, namely 102 of the Colorado Rules of Civil Procedure, is in procedure and substance in conflict with the Fourth and Fourteenth Amendments both on its face and as applied. These assets were described in some detail in the complaint.
 
 
 4
 It is alleged that the damages suffered were not less than $100,000 and not more than $4 million. The prayer seeks adjudication that the writ of attachment issued by the District Court violated the plaintiff's constitutional rights and was void. The basic question presented to the District Court was whether the attachment in aid of suit, which was granted pursuant to Colorado Rule of Civil Procedure 102 violated the Constitution.
 
 
 5
 The trial court did not determine the merits of the case. Instead on motion of the Attorney General the court abstained and did so on the basis that proceedings were then pending in the Colorado District Court and that these were capable of disposing of the action.
 
 The court said:
 
 6
 It is apparent that this action in this court is a collateral attack on the pending state court proceedings. Under the principle of comity recognized in Younger v. Harris, 401 U.S. 37 (, 91 S.Ct. 746, 27 L.Ed.2d 669) (1971); Huffman v. Pursue, Ltd., 420 U.S. 592 (, 95 S.Ct. 1200, 43 L.Ed.2d 482) (1975); and Juidice v. Vail, 45 U.S.L.W. 4269 (U.S. Mar. 22, 1977) (430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)), this court must abstain from interference with the state litigation.
 
 
 7
 The court thereafter dismissed the suit.
 
 
 8
 The sole issue which is here presented is whether the court was correct in its determination that it was required to abstain. Our conclusion is that the cause must be remanded, not because the trial court abstained, but because it dismissed the lawsuit as well.
 
 
 9
 In the state action filed by the Attorney General, pursuant to the Colorado Consumer Protection Act, C.R.S.1973, § 6-1-101 Et seq., Western Food Plan, Inc., the plaintiff-appellant herein, was not originally named. Listed as defendants were a number of corporations, including the Micron Corporation, Supreme Food Corporation, Supreme Food Distributors and Supreme Food of Utah Corporation, together with Talon Corporation, a Colorado corporation. However, in that suit Western Food intervened and filed a counterclaim which alleged Inter alia that on August 4, 1976, Micron Corporation was in default on a $3 million line of credit which had been issued by F.N.B. Financial Company, an affiliate of the First National Bank of Boston. Hussel, the major stockholder of Micron, purchased the note from F.N.B. for full value. Thereupon, on or about August 4, 1976, Hussel took possession of the assets of Micron Corporation and transferred the same to Western, the plaintiff-appellant, a newly formed Utah corporation.
 
 
 10
 The allegation is that Western was formed in order to carry out the objects of the Micron business. It sought to get the Attorney General's permission to do so, but the Attorney General filed its action in the Denver District Court on August 13, 1976, for the issuance of writs of attachment.
 
 
 11
 Western's complaint in intervention alleges that the writ of attachment is void for various reasons, one of which is that the writ of attachment violates the Colorado Constitution as well as the United States Constitution. Damages are claimed in the amount of not less than $100,000 and not more than $4 million.
 
 
 12
 The § 1983 suit, which is described in the first amended complaint of Western Food Plan, Inc., is substantially similar to the complaint in intervention that was filed in the district court. Many of the allegations are identical in fact. The center of attack in the § 1983 suit is the obtaining of the writ of attachment in state court. The contention is that this writ of attachment constituted a substantial cause of the damages that were complained of in the other suit also. The amount in this instance is, however, $3.9 million instead of $3 million.
 
 
 13
 We have not examined each of the several claims for relief contained in the § 1983 complaint, but we are nevertheless convinced that the thrust of each of these actions is quite similar, and with that in mind we consider the abstention issue.
 
 
 14
 The leading case on the type of abstention which applies when litigation is being conducted or is about to be commenced both in federal and state court is Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). There the Texas Railroad Commission had ordered that no sleeping cars should be operated on any line in Texas unless such cars are continuously in charge of an employee having the rank and position of pullman conductor. This was to remedy a situation on lines in which passenger traffic was light and which pulled but one sleeping car. No pullman conductor was included in such crews. This was an obvious attempt to prevent a black person from being in charge of the single pullman cars. The Supreme Court noted jurisdiction, but concluded that in the interests of maintaining favorable relations with state courts the federal court should use its equitable powers to abstain at least until the matter had been fully litigated in state court. The Court said:
 
 
 15
 In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. Glenn v. Field Packing Co., 290 U.S. 177 (54 S.Ct. 138, 78 L.Ed. 252); Lee v. Bickell, 292 U.S. 415 (54 S.Ct. 727, 78 L.Ed. 1337). The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court.
 
 
 16
 The cause was remanded to the district court with directions
 
 
 17
 to retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion. Compare Atlas Ins. Co. v. Southern, Inc., 306 U.S. 563, 573 (59 S.Ct. 657, 662, 83 L.Ed. 987), and cases cited.
 
 
 18
 312 U.S. at 500 and 501-502, 61 S.Ct. at 645 and 646.
 
 
 19
 Wright, Law of Federal Courts, 3rd ed., at page 219, explains that this method allows the state court to decide the state issues and the federal court to avoid deciding a federal constitutional question prematurely or unnecessarily, since, if the state court should hold the order unauthorized as a matter of state law, there will be no need for the federal court to pass on the federal question.
 
 
 20
 That the Pullman case continues to receive recognition is shown by the recent opinion of the Supreme Court in Carey v. Sugar, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), which was an appeal from a judgment of a three-judge federal court in the Southern District of New York, declaring unconstitutional and enjoining enforcement of certain New York statutes which provided for prejudgment attachment of a defendant's assets. The allegations of the complaint were not dissimilar from those which we have before us. Like the present case the allegation in the basic action was that some species of deception had taken place. The three-judge court found the New York prejudgment attachment provision unconstitutional because, according to the Supreme Court, the opportunity to vacate the attachment was inadequate to justify the property deprivation involved. In a per curiam opinion the Supreme Court said that where fact issues are raised, on a motion to vacate an attachment, with respect to the merits of the underlying claim, a preliminary hearing has to be held on those issues. Based on that the Supreme Court said that it would be unwise for it to address the constitutionality of the New York attachment statute because such action might be rendered unnecessary by a decision of the New York courts under state law. Citing Railroad Comm'n v. Pullman Co., supra, the Supreme Court said further that even if the statute were unconstitutional, it was possible that the state courts would construe it so as to remove any constitutional problems. The judgment of the three-judge court was vacated and it was remanded with directions to abstain from a decision on the federal constitutional issues until the parties had had an opportunity to obtain a construction of New York law from the New York state courts.
 
 
 21
 We do not find fault with the decision of the trial court to abstain on the basis that proceedings were then pending in the district court and these were capable of disposing of the action.
 
 
 22
 We do disagree with the dismissal of the action by the District Court, if, as the court has said, the action is still pending in the state court, and we have no reason to conclude that it is not still pending, and abstention is certainly proper under Pullman And Carey. These cases, however, contemplate that the abstaining court shall maintain control of the litigation pending the state court disposition. If need be it can try the case on the merits if the state court does not resolve the controversy under state law.
 
 
 23
 Accordingly, it is the judgment of this court that the cause must be remanded with directions to the trial court to reinstate this cause and to hold it in abeyance pending completion of state court proceedings. Thereafter, the cause can be tried or dismissed depending on the outcome of the state court proceedings.
 
 
 
 *
 Of the District of Kansas, sitting by designation