## HUSTON v. IOWA SOAP CO.*
### No. 10606.

Circuit Court of Appeals, Eighth Circuit.

Sept. 8, 1936.

*Writ of certiorari denied 57 S. Ct. 119, 81 L. Ed. ——.

650

J. P. Jackson, Sp. Asst. to the Atty. Gen., and Robert H. Jackson, Asst. Atty. Gen. (Stanley Reed, Sol. Gen., of Washington, D.C., Sewall Key and F. A. LeSourd, Sp. Assts. to the Atty. Gen., and Charles A. Horsky, of Washington, D. C., on the brief), for appellant.

J. G. Gamble, of Des Moines, Iowa (R. L. Read and J. F. Rosenfield, both of Des Moines, Iowa, Carl C. Riepe and Milton O. Riepe, both of Burlington, Iowa, Gamble, Read & Howland, of Des Moines, Iowa, and Hirsch, Riepe & Wright, of Burlington, Iowa, on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and DEWEY, District Judge.

THOMAS, Circuit Judge.

The appellee, Iowa Soap Company, an Iowa corporation, brought this suit in the District Court against the appellant, Huston, as collector of internal revenue for the district of Iowa, for an injunction to restrain the collection of processing taxes under section 602½(a) of the Revenue Act of 1934, 26 U.S.C.A. § 999(a). A preliminary injunction was requested. The defendant moved to dismiss the bill of complaint on the grounds (1) that the court is without jurisdiction to restrain or enjoin the collection of the taxes or to hear and determine the issues because:

"1. Section 3224 of the Revised Statutes of the United States [26 U.S.C.A. § 1543] prohibits the maintaining in any court of a suit for the purpose of restraining the assessment and/or collection of a federal tax.

"2. The bill of complaint sets forth no facts, which, if true, would entitle complainant to the relief prayed for in a court of equity, or to any injunctive relief pendente lite in this cause.

"3. Complainant has a plain adequate and complete remedy at law."

And (2) that upon the whole record the plaintiff is not entitled to injunctive relief pendente lite.

After hearing upon plaintiff's application for a preliminary injunction and defendant's motion to dismiss the bill, an order was entered denying the motion to dismiss and granting a preliminary injunction. The appeal is from that order.

The plaintiff is engaged in the manufacture of soaps and allied products, with plants at Burlington, Iowa, and at Camden, N. J. Its products are sold in intrastate, interstate, and foreign commerce. Among the ingredients used in the making of its products are coconut oil and palm oil. Coconut oil has been obtained for the most part from the Philippine Islands and palm oil from Africa.

Section 602½(a) of the Revenue Act of 1934 (c. 277, 48 Stat. 680, 763, 26 U.S.C.A. § 999(a) imposed a processing tax upon these and other oils, and this is the reason for the complaint. Said section provides:

"(a) There is imposed upon the first domestic processing of coconut oil, sesame oil, palm oil, palm kernal (sic) oil, or sunflower oil, or of any combination or mixture containing a substantial quantity of any one or more of such oils with respect to any of which oils there has been no previous first domestic processing, a tax of 3 cents per pound, to be paid by the processor. There is hereby imposed (in addition to the tax imposed by the preceding sentence) a tax of 2 cents per pound, to be paid by the processor, upon the first domestic processing of coconut oil or of any combination or mixture containing a substantial quantity of coconut oil with respect to which oil there has been no previous first domestic processing, except that the tax imposed by this sentence shall not apply when it is established * * * that such coconut oil * * * is wholly the production of the Philippine Islands or any other possession of the United States. * * * All taxes collected under this section with respect to coconut oil wholly of Philippine production or produced from materials wholly of Philippine growth or production, shall be held as a separate fund and paid to the Treasury of the Philippine Islands, but if at any time the Philippine Government provides by any law for any subsidy to be paid to the producers of copra, coconut oil, or allied products, no further payments to the Philippine Treasury shall be made under this subsection. For the purposes of this section the term 'first domestic processing' means the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, but does not include the use of palm oil in the manufacture of tin plate. * * *

"(f) All provisions of law (including penalties) applicable in respect of taxes imposed by section 600 of the Revenue Act of 1926 [sections 1120(a) (b) and 1124(a)] shall, insofar as applicable and not inconsistent with this section, be applicable in respect of the taxes imposed by this section." 26 U.S.C.A. § 999(a, f).

The bill alleges that the Philippine government has not provided by law for any subsidy to be paid to the producers of copra, coconut oil, or allied products; that during the month of October, 1935, plaintiff used 239,284 pounds of Philippine coconut oil on which there is a processing tax liability under said Revenue Act of $7,178.-52, which would be due November 30, 1935, and 12,803 pounds of palm oil on which the tax would be $384.09; that from May 10, 1934, when the act went into effect, up to September 30, 1935, it had paid a total processing tax in the sum of $144,520.29 on coconut oil and of $9,654.70 on palm oil; and that, in addition to said sums, plaintiff during the same period paid to refineries in increased prices due to the tax the further sum of $42,375; that these oils are essential ingredients of the products of plaintiff, and that they will be required for use in substantially the same or larger quantities in the future, and that no substitutes for them can be used.

It is further alleged that plaintiff cannot recover any of the taxes by passing them on to its customers because its products are sold in highly competitive markets; that by reason of its inability to pass on the taxes it has sustained substantial operating loss in the conduct of its business during the last six months of the year 1934 and the first ten months of 1935; and that it has had to borrow money to pay such taxes. It is shown by the affidavit of the president of the plaintiff company that it is indebted in the sum of $600,000, $350,000 of which is represented by current bank loans and $250,000 of which is in serial notes maturing in February, 1937, and February, 1938; that it has cash on hand in the sum of $60,553.30 and unencumbered fixed assets in the city of Burlington having a net depreciated value of $426,360.02, and also fixed assets in Camden having a substantial value.

By reason of the situation thus alleged, it is claimed that plaintiff, notwithstanding the prudent, economic, and efficient management of its business, will be compelled to borrow money with which to pay the tax; that it will be compelled to finance such payments in the future with borrowed

money, "with the result that the business, properties and good will of the plaintiff will be substantially destroyed."

It is alleged that section 602½(a) of the Revenue Act of 1934 is unconstitutional and void in so far as it authorizes a processing tax of 3 cents per pound upon coconut oil, for the reason that it is repugnant to section 8 of article 1 and clause 7, section 9, of article 1 of the Constitution; and that the tax on palm oil, in addition to its being in violation of section 8, article 1, of the Constitution, is also violative of the Fifth Amendment.

The plaintiff sought administrative relief by filing claims for refunds of taxes paid on both Philippine coconut oil and palm oil, but no refunds have been made. In the absence of an injunction, plaintiff says it cannot incur the risk involved in refusing to pay the tax because of the heavy penalties and interest imposed by the revenue laws. It is averred further that the applicable laws afford no plain, speedy, and adequate remedy.

Plaintiff's application for a temporary injunction and defendant's motion to dismiss present two questions for determination: (1) Whether the plaintiff, under the circumstances disclosed by the bill and supporting affidavits, is entitled to a preliminary injunction against the collection of taxes imposed by section 602½(a) of the Revenue Act of 1934, notwithstanding the provisions of section 3224 of the Revised Statutes; and (2) whether section 602½(a) of said Revenue Act is a valid exercise under the Constitution of the taxing power of Congress.

These questions have been argued with great skill and ability by counsel for both parties, and we have given the case careful consideration. Since the plaintiff is seeking injunctive relief in a court of equity and the issue of jurisdiction is raised, it is apparent that a determination of but one of these questions is required to settle this appeal, unless it appears that plaintiff has no adequate remedy at law. For, if it is found that the plaintiff has an adequate remedy at law, the alleged unconstitutionality of the taxing statute is immaterial. On the other hand, if it is found that the tax is valid and the statute under which it is levied constitutional, plaintiff is entitled to no relief in equity.

When issues of this character are presented, it is appropriate for the inferior federal courts to consider first the question of equitable jurisdiction. Accordingly we shall proceed to consider the question of the adequacy of plaintiff's remedy at law and the effect of section 3224 of the Revised Statutes (26 U.S.C.A. § 1543) upon the jurisdiction of the court. Section 3224 provides that: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

That section 3224 is not as inclusive as it appears, and that it is not an absolute bar in every case to injunctive relief, has been held in Hill v. Wallace, 259 U.S. 44, 62, 42 S.Ct. 453, 66 L.Ed. 822; and, in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422, the Supreme Court, alluding to this section of the Revised Statutes, say: "This court * * * recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector."

The contention of plaintiff is that the circumstances alleged in the bill are sufficiently special and extraordinary to bring this case within some of the acknowledged heads of equity jurisprudence. If this be true, then to warrant an injunction there must be, in addition to such special and extraordinary circumstances, an illegal exaction in the guise of a tax. In other words, a court of equity will not grant an injunction in the face of the statute unless there exists simultaneously an illegal tax and some such "special and extraordinary circumstances." If either element is lacking, injunctive relief will be denied.

We next consider, therefore, the alleged circumstances claimed by the plaintiff to be sufficient to give a court of equity jurisdiction to grant an injunction restraining the collection of the tax notwithstanding the provisions of section 3224 of the Revised Statutes. They are: (1) Ultimate financial ruin resulting from the continued payment of the tax; (2) avoidance of a multiplicity of actions; (3) uncertainty of the ability of the taxpayer to secure a refund of the taxes; (4) the act does not levy a "true tax"; and (5) the tax is not levied for the support of the government. To sustain the first of the above enumerated propositions it is alleged that from the time the act went into effect un-

til the end of the first ten months of 1935 the company's business was operated at a loss, while prior to that period the business was operated at a profit; that it has borrowed the money with which to pay the tax, and that it will be compelled to continue the same policy because, not being able to pass the tax on to its customers on account of competitive conditions, it must continue to operate at a loss; and that its constantly growing indebtedness is so great now that it will in the near future be unable to borrow more.

■ Mere apprehension of "ultimate" ruin to plaintiff's business on account of a tax is not sufficient to entitle one to injunctive relief in equity. It must appear that such ruin is so imminent that the remedy provided by law is not adequate. Allegations of the mere hardship or injustice of the tax are not a recognized foundation of equitable jurisdiction. State Railroad Tax Cases, 92 U.S. 575, 614, 23 L.Ed. 663; Stafford Mills v. White (D.C.Mass.) 41 F.(2d) 58, 59.

■ The facts disclosed in the petition and affidavits do not sustain the charge that the legal remedy is inadequate. It is shown that the company has an indebtedness of $600,000, but the amount of its assets do not appear in full. It is alleged that the company owns unencumbered fixed assets in the city of Burlington of the depreciated value of $426,360.02 and in Camden of a substantial amount. The amount of its current assets, however, is not revealed, other than cash in the amount of $60,553.-30. The company has a capital investment of $715,700, but it is not shown whether the capital has been impaired or whether there is a surplus. It cannot be inferred that all or any given part of the company's indebtedness is due to borrowing money to pay the tax in question. It is apparent that money is borrowed for other purposes. It appears that between November 11, 1935, the date the bill was verified, and November 27, 1935, the date of the affidavit of the Company's president, the borrowed indebtedness of the company increased in the amount of $25,000. During that period no taxes were paid, and the amount falling due November 30, 1935, was approximately only $7,500.

Further, it is shown in the bill that plaintiff had already filed a claim for refund before the institution of this suit; and it is averred that the "company is able to give any reasonable security that may be required * * * to the end that if eventually the company is required to pay the processing taxes payment thereof can be enforced." These facts, considered in connection with the amount of unencumbered assets shown, all demonstrate that such delay as may be necessarily incident to the remedies provided by law will not work an irreparable injury to the plaintiff. Phillips v. Commissioner, 283 U.S. 589, 593f, 51 S.Ct. 608, 75 L.Ed. 1289; State Railroad Tax Cases, supra; Reinecke v. Peacock (C.C.A.7) 3 F.(2d) 583, 587.

The decision of the Supreme Court in Miller v. Nut Margarine Company, supra, does not aid the plaintiff on this point. In that case it appeared that the Commissioner was not only attempting to collect an illegal tax on a nontaxable article, but also in an amount greater than the plaintiff could possibly pay. The facts in Higgins Mfg. Co. v. Page (D.C.R.I.) 20 F.(2d) 948, relied upon by plaintiff, were identical with those in the Miller Case. These were not cases of mere hardship or inconvenience, but cases in which the payment of the illegal tax presently demanded would completely and at once destroy the taxpayer's business. Here the court is asked to grant an injunction on the conjecture of the plaintiff that the continued payment of the tax will ultimately result in ruin. The circumstances disclosed fall short of that special and extraordinary character required by law to take the case out of the prohibition of section 3224.

■ The plaintiff's next alleged ground for an injunction is the avoidance of a multiplicity of actions. This is based upon the statement that each month the plaintiff is processing a large amount of coconut and palm oil and each month the tax thereon is payable. In order to protect its rights and to recover the tax, if found illegal, it is asserted that it must monthly file a claim for refund. Thus distinct actions must be started each month until the first action so begun has been decided.

The appellant urges that this procedure is not necessary, because under the applicable law the taxpayer has four years in which to file its claims for refunds and two years from the date of rejection in which to bring suit. Revised Statutes, §§ 3220, 3228 (U.S.C. title 26, §§ 1670, 1433, as amended 26 U.S.C.A. §§ 1670, 1433). For this reason one suit at law is all that is necessary to determine plaintiff's rights. Whether or not more than one suit is

brought is under the complete control of the plaintiff. It is not a case of threatened continuous and vexatious litigation.

The appellant's contention upon this point has been sustained by the decision of the Court of Appeals of the District of Columbia in Haskins Bros. & Co. v. Henry Morgenthau, Jr., Secretary of the Treasury (App.D.C.) 85 F.(2d) 677, decided June 30, 1936. See, also, Los Angeles Soap Co. v. Rogan (D.C.Cal.) 14 F.Supp. 112, 118. In Matthews v. Rodgers, 284 U.S. 521, 529, 52 S.Ct. 217, 221, 76 L.Ed. 447, the Supreme Court denied equitable relief, saying: "As to each appellee a single suit at law brought to recover the tax will determine its constitutionality, and no facts are alleged showing that more than one suit will be necessary for that purpose." In the case of Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U.S. 276, 286, 29 S.Ct. 426, 430, 53 L.Ed. 796, a situation almost identical with the facts in this case is presented. In that case the plaintiff supplied water to the city. The city enacted an ordinance requiring the company to pay on the first day of every month a license fee of $300. Suit was brought to enjoin its collection and equitable jurisdiction was invoked on the ground of avoidance of a multiplicity of suits to recover the fee and the unconstitutionality of the ordinance. Relief in equity was denied, the court saying:

"Nor do we think that there is any danger of a multiplicity of suits in the sense that would authorize the issuance of an injunction. One suit only has been brought, and that by direction of the city council. It remains pending, and when it reaches judgment it will determine finally every question in dispute between the parties. There is no need of any other suit except to prevent the running of the statute of limitations, and nothing to indicate that any will be brought. Where the multiplicity of suits to be feared consists in repetitions of suits by the same person against the plaintiff for causes of action arising out of the same facts and legal principles, a court of equity ought not to interfere upon that ground unless it is clearly necessary to protect the plaintiff from continued and vexatious litigation. Something more is required than the beginning of a single action with an honest purpose to settle the rights of the parties. 1 Pom.Eq.Jur. (3d Ed.) § 254. Perhaps it might be necessary to await the final decision of one action at law (see, for analogies, Sharon v. Tucker, 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532; Boston & Montana Consol. Copper & Silver Mining Co. v. Montana Ore Purchasing Co., 188 U.S. 632, 23 S.Ct. 434, 47 L.Ed. 626), but that we need not decide."

The rule applied in the last cited case was discussed and applied to similar circumstances in Standard Oil Co. of Kentucky v. Atlantic Coast Line R. Co. (D.C. Ky.) 13 F.(2d) 633, 635, and in Moor v. Texas & N. O. R. Co. (C.C.A.5) 75 F.(2d) 386, 388.

The plaintiff in support of its contention relies upon Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822, Lee v. Bickell, 292 U.S. 415, 54 S.Ct. 727, 78 L.Ed. 1337, and Wilson v. Ill. So. Ry., 263 U.S. 574, 44 S.Ct. 203, 68 L.Ed. 456, and cases of similar import. These authorities, however, are distinguishable from the present case. It is true that injunctions against the collection of a tax were granted in all of the cited cases because there existed in each of them "exceptional and extraordinary circumstances." In Hill v. Wallace the bill was brought by members of the Chicago Board of Trade on behalf of themselves and others against the Board and the revenue officers to restrain compliance with the Future Trading Act, 42 Stat. 187, and the collection of a tax of 20 cents a bushel on contracts for sale of grain for future delivery. With respect to the statute in question, the court said:

"Does section 3224, R.S. [26 U.S.C.A. § 1543], prevent the application of similar principles to a federal taxing act? It has been held by this court, in Dodge v. Brady, 240 U.S. 122, 126, 36 S.Ct. 277, 60 L.Ed. 560, that section 3224 of the Revised Statutes does not prevent an injunction in a case apparently within its terms in which some extraordinary and entirely exceptional circumstances make its provisions inapplicable. See, also, Dodge v. Osborn, 240 U.S. 118, 122, 36 S.Ct. 275, 60 L.Ed. 557. In the case before us, a sale of grain for future delivery without paying the tax will subject one to heavy criminal penalties. To pay the heavy tax on each of many daily transactions which occur in the ordinary business of a member of the exchange, and then sue to recover it back would necessitate a multiplicity of suits, and, indeed, would be impracticable. For the Board of Trade to refuse to apply for designation as a contract market in order to test the validity of the

act would stop its 1,600 members in a branch of their business most important to themselves and to the country. We think these exceptional and extraordinary circumstances with respect to the operation of this act make section 3224 inapplicable. The right to sue for an injunction against the taxing officials is not, however, necessary to give us jurisdiction. If they were to be dismissed under section 3224, the bill would still raise the question here mooted against the Board of Trade and its directors."

See the lucid interpretation of Hill v. Wallace by Chief Justice Taft in Graham v. Du Pont, 262 U.S. 234, 257, 43 S.Ct. 567, 67 L.Ed. 965.

In Lee v. Bickell stockbrokers in New York sought an injunction to restrain the enforcement of a Florida statute for the collection of stamp taxes on memoranda of sales of stock in the state of Florida, each violation of which act was a criminal offense. Bickell, the Florida commissioner, was attempting to enforce the law. It was claimed that the statute did not apply, and, if so applied, was in conflict with the Constitution. Several hundred transactions were affected every day. Under these exceptional circumstances jurisdiction was assumed, and it was held that the statute was not applicable to the transactions involved.

In Wilson v. Ill. So. Ry. the railroad company, alleging that its property had been erroneously and fraudulently overvalued by the state board of equalization, sought by suits in five different counties among which the assessment had been apportioned to restrain the collectors from proceeding in their respective county courts to collect the tax. Respecting the exceptional circumstances and the multiplicity of suits involved, giving equity jurisdiction, the Supreme Court said: "Assuming that in each of the counties before the tax could be collected a judgment must be obtained in the county court in a civil suit and that in such suits the defendants, the present plaintiffs, could set up the facts here relied upon, * * * not only would those suits be many, but there would be insuperable difficulty in determining what the proper assessment against the whole road should be and in apportioning the due share to the county concerned. This difficulty would recur in each of the five counties with not improbably different results in each. It seems to us that the right of full defence in those suits, if it exists, is not an adequate remedy at law."

Mere reference to the cases relied upon by plaintiff is sufficient to show that they do not support its contention in this case.

■ The third contentions of the plaintiff is that the uncertainty of the ability of the taxpayer to secure refund of the taxes paid in an action at law is sufficient ground for equitable relief. The argument is that a judgment obtained for the recovery of the tax must await an appropriation by act of Congress, and it is possible that a recalcitrant Congress will refuse to make the specific appropriation. This contention is untenable in a court of the United States in an attack upon a federal tax. Default cannot be attributed to the government. "It is presumed to be always ready to pay what it owes." U. S. ex rel. McLeod v. Sherman, 98 U.S. 565, 568, 23 L.Ed. 235. A similar contention was urged in the case of Fisher Flouring Mills Co. v. Vierhus, 78 F.(2d) 889, 892, and the Circuit Court of Appeals of the Ninth Circuit answered the contention in this apt language:

"It would be a strange procedure for a court of chancery to measure the adequacy of a remedy at law, not by what the law is at the time the equity suit is filed, but by certain nebulous conjectures of what the law may be at some future time. 'Jurisdiction is determined as of the time the suit was commenced.' Pacific Telephone & Telegraph Co. v. City of Seattle (D.C.) 14 F.(2d) 877, 879. 'Equity acts in the present tense.' Continental Securities Co. v. Interborough R. T. Co. (D.C.) 207 F. 467, 471, affirmed 221 F. 44 (C.C.A.2). The appellants had at the time of the commencement of these suits, and still have, a plain, adequate, and complete remedy at law. They can pay the tax and sue to recover at law. Equity is not to be frightened into assuming jurisdiction by the bugaboo of dire prophecies of what the law may be in the future. 'To grant an injunction in anticipation of a possible injury to arise under a law that may never be passed, is, to say the least, unusual. What the complainant's rights may be, and what relief should be afforded him in the event of the passage of such a law as he contemplates, cannot now be anticipated.' Ryan v. Williams (C.C.) 100 F. 172, 175. It would be an unwarranted encroachment by the judiciary upon the legislative branch of the government 'should the court attempt a race of diligence with Congress to defeat the applicability of an Act to a pending case.' La Croix v. United States (D.C.W.

D.Tenn.) decided July 27, 1935, reported in 11 F.Supp. 817. We are unanimously of the opinion that this court should not be governed or influenced in its action by speculations or predictions regarding future congressional enactments."

Plaintiff next argues most earnestly that, even though there exist no "special and extraordinary circumstances" (which is not conceded), still a court of equity has jurisdiction to grant an injunction, because section 602½(a) does not levy a true tax, and therefore section 3224 is not applicable. The claim that the tax imposed is not a true tax assumes the issue upon the question of constitutionality; but, granting the assumption arguendo, we are not inclined to hold that mere illegality of a tax unaided by any "special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence" gives the court jurisdiction to restrain the collection of a tax in the teeth of section 3224. To so hold requires the overruling of a long line of decisions of the Supreme Court. Bailey v. George, 259 U.S. 16, 20, 42 S.Ct. 419, 66 L.Ed. 816; Dodge v. Osborn, 240 U.S. 118, 120, 36 S.Ct. 275, 60 L.Ed. 557; Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 76 L.Ed. 422; Pacific Steam Whaling Co. v. United States, 187 U.S. 447, 451, 23 S.Ct. 154, 47 L.Ed. 253; Pittsburgh, C., C. & St. L. Ry. v. Board of Public Works, 172 U.S. 32, 37, 19 S.Ct. 90, 43 L.Ed. 354; Shelton v. Platt, 139 U.S. 591, 594, 11 S.Ct. 646, 35 L.Ed. 273; Dows v. Chicago, 11 Wall. (78 U.S.) 108, 112, 20 L.Ed. 65; State Railroad Tax Cases, 92 U.S. 575, 613, 23 L.Ed. 663; Hannewinkle v. Georgetown, 15 Wall. (82 U.S.) 547, 548, 21 L.Ed. 231; Graham v. Du Pont, 262 U. S. 234, 43 S.Ct. 567, 67 L.Ed. 965. Counsel maintain that the rule adhered to in all these cases has been modified or overruled by the Supreme Court in Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513.

We are of opinion that there is nothing in the Rickert Rice Mills v. Fontenot Case to justify the interpretation placed upon it by counsel for plaintiff, nor to lessen the binding force of the decision of the Supreme Court in Bailey v. George, supra, and in other cases cited above. All that the Supreme Court held in the Rickert Rice Mills Case was that the funds impounded pendente lite should be paid back to the petitioner. See Los Angeles Soap Co. v. Rogan (D.C.Cal.) 14 F.Supp. 112, 117. It is true that an injunction had previously been granted in the Rickert Case, 296 U.S. 569, 56 S.Ct. 249, 80 L.Ed. 401, pending the determination of the cause on certiorari in the Supreme Court and requiring the tax pendente lite to be impounded in a depository. No reason, however, is assigned for the action taken, and it may have resulted from a showing of exceptional circumstances not present in this case. Presumably the injunction was granted because a majority of the Supreme Court were of opinion that the remedy provided for recovery of the tax in the Agricultural Adjustment Act as amended by the Act of August 24, 1935 (7 U.S.C.A. 601 et seq.), was inadequate. But we are not authorized to depart from the rule laid down in Bailey v. George, supra, upon a mere conjecture as to what the Supreme Court may have had in mind in the absence of some expression upon that point.

■ Finally, the plaintiff contends that section 3224 is not applicable, because taxes levied under section 602½(a) are not for the support of the government but are segregated and paid over to the Philippine government. This is saying over again by way of argument that section 602½(a) is unconstitutional and that for such reason section 3224 is not applicable. This proposition has been disposed of in our discussion of the claim that the tax is not a true tax and what we there said is applicable here.

It is not contended that the plaintiff has no remedy at law. Subsection (f) of section 602½ (26 U.S.C.A. § 999(f) makes available all the legal remedies open to any taxpayer to recover taxes "erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected" (R.S. §§ 3220, 3226, 3228, as amended 26 U.S.C.A. §§ 1670, 1672–1673, 1433) by proceedings at law. All charges that these remedies are not adequate have been discussed above and they require no further comment.

■ We conclude, therefore, that the District Court was without jurisdiction in equity to enjoin the defendant, because the bill did not disclose any special or extraordinary circumstances sufficient to bring the case within any acknowledged head of equity jurisprudence and to overcome the prohibition of section 3224, and because plaintiff has an adequate remedy at law. This

being true, it is neither necessary nor appropriate on this appeal to discuss the constitutionality of the taxing statute. Burton v. United States, 196 U.S. 283, 295, 25 S. Ct. 243, 49 L.Ed. 482. For the foregoing reasons, the judgment and decree granting a preliminary injunction and overruling the motion to dismiss is reversed, and the case is remanded to the District Court, with instructions to dissolve the injunction and to dismiss the bill.

Reversed.

DEWEY, District Judge, dissents.