E. Solé & Co., *S. en C.*, Plaintiff and Appellee, *v.* Rafael Sancho Bonet, Treasurer of Puerto Rico, Defendant and Appellant.

No. 7350.   Argued January 24, 1938.—Decided July 30, 1938.

B. *Fernández García*, Attorney General, R. *Cordovés Arana*, Assistant Attorney General, on the brief, and E. *Córdova Díaz*, Deputy Attorney General, for appellant. *Juan B. Soto* and E. *Igaravídez* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The Treasurer of Puerto Rico, in response to an order to show cause why an injunction *pendente lite* should not issue in an action to enjoin the collection of certain taxes, moved to dismiss the action for want of jurisdiction and for want of equity. These two grounds were more elaborately set forth in the form of ten specific reasons.

The district court, after a hearing at which some evidence was introduced, overruled the motion and granted a temporary injunction.

From the complaint we gather the following alleged facts:

Plaintiff was and had been from the time of its organization engaged in the manufacture, production and sale of trucks and omnibuses of all kinds; among the materials used in this industry were included certain parts or units known as chassis which were used by plaintiff as indispensable raw material for the operation and work of said industry; the Public Service Commission of P. R., January 11, 1932, at the instance of plaintiff, declared said industry a new industry, and resolved: "To exempt, as the same is hereby exempted, from the payment of all kinds of taxes in accordance with the law in force, to wit, Act No. 40, approved April 25, 1930, E. Solé & Co. S. en C. of San Juan, in the industry which they have established consisting of the manufacture and mounting of *carrocerías* of all kinds, bodies, chassis, *plataformas* and tops for all kinds of motor vehicles"; the commission in its resolution fixed January 14, 1934, as the expiration date for the term of said exemption, and on July 15, 1934, extended the said term until January 14, 1939; among the chassis necessarily used by plaintiff in its industry were No. G.–516,200, Model 241, No. G.–516,247, Model 241 and No. G.–516,254, Model 241 which were imported by plaintiff from the United States for use and were used by plaintiff in its said industry as new (*sic*) material, necessary for the purposes thereof; the assistant-treasurer,

acting as the representative of the Treasurer, July 2, 1934, demanded payment of $872.52, as the tax imposed by section 105 of the Internal Revenue Law and claimed to be due by reason of the importation and use of the said chassis; the Treasurer, July 20, 1934, attached a Diamond T truck, the property of plaintiff, to secure the payment of said $872.52 and of the surcharges amounting to a total of $978.20, and he notified plaintiff that if it did not pay the tax within ten days the attached property would be sold to recover the amount of the said taxes, penalties and costs; defendant had no jurisdiction nor authority to impose or collect the said tax on necessary material for the operation and work of the said industry; the collection of the said tax subjected plaintiff and its industry to difficulties which endangered the carrying on and existence of such industry which was suffering from the economic depression and had extended credit and built up its business in accordance with calculations and plans based on the fact that it was exempt from such taxes; the damages which defendant would cause plaintiff and its industry, if permitted to collect the said tax, were of an irreparable nature, and it was impossible to determine the scope and extent thereof; the imposition and collection of the said tax were contrary to the provisions of Act No. 40 of 1930, to the orders of the Public Service Commisison mentioned in the complaint, to the Organic Act, and to the Fourteenth Amendment of the Constitution of the United States; if defendant were permitted to impose and collect the tax, plaintiff would be obliged to pay the same under protest whenever it imported a chassis for use in its industry and to seek recovery in the ordinary action which would result in a multiplicity of suits since plaintiff frequently imports such chassis for use in its said industry; there was no ordinary remedy at law to prevent defendant from collecting the said tax and unless enjoined, defendant would collect it because there was no other adequate remedy whereby to prevent the collection thereof.

Defendant, by denial and affirmation, put in issue the essential averments of the complaint, and set up six special defenses.

Plaintiff's managing partner testified in substance as follows:

Solé & Co. was engaged, since the latter part of 1931, in the manufacture of omnibuses, trucks, delivery wagons and of accessories

and tops for these vehicles; old vehicles, when taken in trade, were dismantled and rebuilt; the *carrocería* and cab were constructed and the chassis was entirely modified and damaged parts were replaced; the raw materials were obtained in part from the States and in part in Puerto Rico; the chassis came from the States, lamps and electrical installation came from the States; alterations were made in the chassis, they were shortened or lengthened as required, the springs were reinforced; the chassis was also reinforced by cross-members made of iron; the electrical installation was altered according to the kind of vehicle to be delivered; the tires were changed and substituted by a size suitable to the vehicle; the rims also were changed according to the size of tire to be used; taxes were paid on chassis imported and sold as received; this had been done some seven or eight times; the buses which were to be mounted on chassis were constructed almost entirely of materials purchased in Puerto Rico; as to trucks, the chassis was also modified according to the kind of truck to be delivered, if the body (plataforma) was large, the chassis had to be lengthened; the spring had to be reinforced; the tires had to be changed; the chassis had to be reinforced with cross-members; delivery wagons were also made from materials purchased in Puerto Rico, the wood, paint, electrical materials, zinc, material for the tops; plaintiff, from the beginning of its present business, counted on exemption from taxation and knew that exemption had been granted to other like industries; plaintiff obtained from the Public Service Commission an exemption in the latter part of 1931; the body of an omnibus was the part mounted on the chassis and formed part of the chassis because it was fastened by bars (*vigas*) attached to the chassis in its entire width; plaintiff manufactures the seats, the iron parts and other materials were purchased in Puerto Rico; the chassis came from the States; plaintiff did not manufacture Diamond T chassis, but ''reformed'' them; the ''reformation'' consisted in lengthening or shortening the chassis; the chassis was lengthened by placing bars behind the frame because the buses were generally longer than the chassis and in order to support the bus, steel bars had to be placed in the rear; cross-bars also had to be used; the frame was lengthened and reinforced; a bar was placed on each side of the frame or a Y shape bar was used in order to lengthen the frame and a cross bar was used to cross the Y; cross-bars were then placed so as to support the sides of the bus

because the bus was much wider than the chassis; these bars were generally of iron, soldered or riveted to the chassis; the springs had to be changed because they were always weak; they were reinforced by four or five leaves, the clips and the middle bolts were changed; sometimes the position of the springs was changed in order to bring the rear axle nearer the rear; plaintiff did not manufacture chassis; the same procedure was followed in the case of trucks and of delivery wagons; if plaintiff were required to pay taxes on the three chassis described in the complaint and on 250 or 260 other chassis used in the manufacture of motor vehicles, this would mean the ruin of plaintiff's industry; the Treasurer had not attempted to collect for any vehicles sold since the sale of the three; both the vehicles previously and subsequently sold ''were in the same circumstances''; the irreparable damages would consist of having to pay the tax on the three vehicles, which tax plaintiff had not recovered from the purchaser.

Plaintiff offered as evidence a copy of a document dated March 4, 1934, and signed by the chairman and members of the Public Service Commission. This document was entitled:

''In the Public Service Commission of P. R.—*In re:* RECONSIDERATION of the applications for extension of the Exemptions from Taxes allowed to E. Solé & Co., S. en C.; A. Alvárez Hnos.; Pedro A. Pizá; Andréu Aguilar & Co.; Figueroa & Gautier; and West India Machinery & Supply Company. Cases Nos. J–3680, J–3328, J–3596, J–3734, J–3720, J–3597. *Reconsideration and determination nunc pro tunc,* in each and every one of the cases mentioned in the title.''

Defendant objected on the ground that until a declaration of exemption had been shown, evidence as to an extension of the term was inadmissible. Plaintiff offered to produce later a certified copy of all pertinent resolutions. The judge admitted the document on condition that plaintiff should produce the previous resolutions referred to, and gave plaintiff three days in which to present such resolutions. The only document subsequently offered and introduced in evidence by plaintiff was the following:

"IN THE PUBLIC SERVICE COMMISSION OF P. R.

"*In re:*

"Case No. J–3680.

"E. Solé & Co., *S. en C.,*

"Petitioner.                                    "PETITION.

"Application for exemption of taxes and other duties, on account of new industry, pursuant to Act. No. 40 of April 25, 1930.

"To the Honorable Commission:

"Now comes the petitioner in the above entitled case, E. Solé & Co., *S. en C.,* San Juan, represented by its managing partner, Juan Mascaró Soler, and through the undersigned counsel, under oath, respectfully states and alleges:

"1.—That petitioner herein is a mercantile partnership duly registered under the laws of Puerto Rico and is at present engaged in the construction and sale of trucks, omnibuses and bodies in general.

"2.—That petitioner's cash capital amounts to $125,000 which is being applied to the manufacture, production, purchase, sale, storage, assemblage, repairing and alteration of all kinds of bodies, construction and assemblage of bodies for omnibuses (jitneys) and trucks and automobile chassis, platforms and hoods for all kinds of motor vehicles, as well as parts and accessories therefor.

"3.—That the workshops and offices of petitioner herein are located at present at stop 6½ at 28 and 30, Ponce de León Avenue, Puerta de Tierra, San Juan.

"4.—That in order to carry out the purposes of the above undertaking, this petitioner employs at present in the business, as mechanics, carpenters, clerks and laborers, not less than 23 people daily.

"5.—That petitioner herein is at present engaged, and will be so in future, in the development of a business identical with that conducted at present by Auto Body Corporation, Río Piedras; A. Alvárez & Hnos., San Juan; and Pedro A. Pizá, San Juan, who prior to this date have been exempted from the payment of taxes by order of this Honorable Public Commission, on account of new industry.

"6.—That section 3 of Act No. 40 of April 25, 1930, is applicable to the present case of exemption from taxes, since, when a natural or artificial person is granted an exemption from taxes on account of a new industry, the same privilege shall be enjoyed by other persons established in Puerto Rico to carry on the same industry or business.

"BY VIRTUE OF ALL OF WHICH WE PRAY this Hon. Commission to exempt petitioner herein from the payment of taxes as provided in said Act No. 40 of April 25, 1930, for the time remaining to the first of the above undertakings, that is, Auto Body Corporation, for the extinction of its privilege.

"San Juan, P. R., October 26, 1931.—Respectfully, (Sgd.) B. Sánchez Castaño.—Seal of the Commission.

"I, Juan Mascaró Soler, do hereby swear: That the foregoing is my name and that I am managing partner of E. Solé & Co., S. en C., a widower and resident of San Juan; that all the facts alleged in the foregoing petition, as written by my attorney Benicio Sánchez Castaño, in accordance with instructions received from me, are true and personally known to me.

"San Juan, P. R., October 26, 1931.—(Sgd.) J. Mascaró."

The document conditionally admitted in evidence contained recitals to the following effect:

The commission had granted a tax exemption in favor of the Auto Body Corporation as a new industry consisting of the manufacture, production, purchase, sale, storage, mounting, repair and modification of all kinds of *carrocerías*, bodies, chassis, *plataformas* and tops for all kinds of motor vehicles for a term of five years to expire January 14, 1934; A. Alvarez & Hnos., Pedro A. Pizá, E. Solé & Co., West India Machinery & Supply Co., Andréu Aguilar & Co. and Figueroa & Gautier—by reason of being engaged in the same business or industry as to Auto Body Corporation—had subsequently requested that they be exempted from the payment of taxes in accordance with the law in force, Act No. 40, approved April 25, 1930, for the unexpired portion of the term fixed in the case of the Auto Body Corporation; in each of these cases, after a public hearing and an investigation by the commission's engineers, the conclusion had been reached that petitioners were engaged in the same industry or business as the Auto Body Corporation, and the corresponding tax exemption orders had been issued in accordance with Act No. 40, approved April 25, 1930, specifying that the said new industries and their buildings, machinery, materials, franchises, etc. and in general all the property, rights and privileges belonging to the said industries, that might be necessary to their work and operation, were exempt from all kinds of taxes for the unexpired term of the Auto Body Corporation; in April 1932, the Auto Body Corporation had requested an extension of its term for an additional

period of five years to complete the time allowed by law and the commission, in August 1932, had granted the Auto Body Corporation the extension requested, continuing its exemption for another five years to expire January 14, 1939; the petitioners named in the title were still engaged in the same business as that of the Auto Body Corporation and had requested that they be granted, as the Auto Body Corporation had been granted, an extension of the orders of exemption, and for this reason the commission had held the corresponding hearings January 15, 1934; after hearing the interested parties, the commission had resolved that it had always been its intention to exempt from taxes all the component parts which, once united, took the form of a new article, and that when this occurred, all the component parts thereof should be exempted, but notwithstanding this, it had excluded from the privilege the chassis of some trucks built by petitioners; the said petitioners had filed immediately after such resolution a motion for reconsideration of that part of the said resolution of January 15, 1934, which eliminated from the privilege of exemption the chassis of the trucks built or manufactured by petitioners, alleging that such part of the said resolution affected their business to such an extent that it would be reduced to a fourth part of its volume, in addition to the fact that the exclusion of the chassis of the trucks manufactured by them was illegal under the law and the history of these cases; by virtue of the motion for reconsideration of which notice was given the Department of Justice and the Treasury Department and, after giving both departments a reasonable time in which to present such points of law as they might deem advisable, two hearings had been held at which petitioners were represented by attorneys Miguel Guerra Mondragón, Juan Bautista Soto, Emilio S. Belaval and Angel M. Villamil, and the Department of Justice and the Treasury Department, by the law officer, Rafael Cordovés Arana; the question involved was whether the chassis, when used in the construction of the trucks, should be included in the property exempted, there being no doubt about the other articles, such as omnibuses, ambulances, delivery wagons, etc.; petitioners had alleged that, as shown by the records of the commission, the chassis had been included by express provision, but that they had requested an opportunity to present new evidence in this regard to the commission, and it had been ordered, giving the Attorney-General and the Treasurer opportunity to appear; a public hearing for the purpose of determining this question had been held March 8, 1934, and Commisioners Landrón and Delgado, after hearing the evidence, had

reached the conclusion that the work done in connection with the chassis and the trucks in the construction of bodies and cabs, constituted in itself new work in an industry which had not previously existed in Puerto Rico and also modified the raw material, part of which existed in the chassis, since it has been shown that these were lengthened, shortened and reinforced, constituting a new product different from the imported article in its original state; taking as a starting point the order of exemption granted the Auto Body Corporation, the industry in question consisted of the manufacture, production, purchase, sale, storage, mounting, repair and modification of *carrocerías* of all kinds, bodies, chassis, *plataformas* and tops for all kinds of motor vehicles as well as their parts and accessories and from this it followed that the finished articles in these industries were motor vehicles, of whatever kind produced by them, whether omnibuses, trucks, delivery wagons, ambulances or any other kind of motor vehicle and in accordance with section 2 of Act No. 40 of April 25, 1930: "That said new industries and their buildings, machinery, materials, franchises, etc., and, in general, all the properties, rights and privileges belonging to said industries, which are necessary in their work and operation, shall be exempt from all taxes. . ."

The document also contains extracts from Cooley on Taxation, a letter from the Acting Treasurer—dated December 4, 1931, addressed to the attorney for Messrs. A. Alvarez & Hnos. and Pedro A. Pizá—and some other interesting details omitted here in the interest of brevity. The final paragraph follows:

"Now THEREFORE, this Public Service Commission of Puerto Rico does hereby confirm its decision of January 15, 1934, extending the exemptions to the petitioners above mentioned for the time still to be run by the exemption of the original grantee, Auto Body Corporation, that is, to January 14, 1939; and it does hereby reverse the part of its decision which excluded from the exemption the chassis of trucks built by them, because of the exemption from the payment of all kinds of taxes granted to new industries and their buildings, machinery, materials, franchises, etc., and, in general, to all the properties, rights and privileges belonging to said industries, which are necessary in their work and operation, such as chassis, tools, and other materials used in the manufacture, production, assemblage, re-

pairing and alteration of jitney or autobuses, trucks, delivery-wagons and other motor vehicles, the product of the industries mentioned in the title."

If the recitals contained in the foregoing document can be considered as evidence of the facts recited therein, it seems quite clear that the previous orders or resolutions of the commission purported to exempt from taxes the industries engaged in the manufacture of chassis. From the testimony of plaintiff's general manager, it seems equally clear that plaintiff was not as a matter of fact engaged in the manufacture of chassis. A chassis, which is already a finished product, is not transformed into anything new or different merely by a shortening thereof—in the absence of any explanation as to the manner or method of such shortening—nor by riveting to the sides thereof iron bars which project beyond the rear and so as to support the rear end of a bus or truck body which is longer than the chassis, by placing cross-bars so as to support the sides of a body which is wider than the chassis, by reinforcing the springs, and by the changing of tires or rims. The result is the same, of course, whether the lengthening be accomplished by the use of two iron bars attached to the sides of the frame or by the use of a Y shaped bar. In any event, the finished product of an exempted industry is not exempt. See *Sancho Bonet* v. *Corona Brewing Corporation,* 89 Fed. (2d) 479.

Whatever the intention of the Public Service Commission may have been, there is nothing to show that any of its orders or resolutions prior to March 14, 1934, declared exempt from taxation any industry engaged in the manufacture of omnibuses, trucks, or other motor vehicles. The recitals contained in the order of March 4, 1934, as far as they go, point persuasively to a contrary conclusion. We need not now decide whether the resolution of March 14 was, as appellee says, *res judicata,* binding on appellant and not subject to collateral attack, or whether it was as appellant submits, in some respects at least, an absolute nullity.

The three chassis described in the complaint were *prima facie* subject to the tax imposed by subdivision 8 of section 16 of the Internal Revenue Law as amended in 1931 (Session Laws, p. 504). Whether or not these chassis were exempted by the so-called *nunc pro tunc* order of March 14, 1934, was at least a debatable question. If the Treasurer believed and had reason to believe that the taxes could and should be collected, it was his duty to attempt the collection thereof. We are not prepared to say that he has no discretion in such matters. It cannot be said here as was said in *Durlach Bros. Inc.* v. *Treasurer*, 47 P.R.R. 617, that he was not acting in his official capacity or that he was acting without sufficient color of authority. Ordinarily, as pointed out in that case, taxes must be paid under protest. In *Camuñas* v. *New York & Porto Rico Steamship Co.*, 260 Fed. 40, 50, the Circuit Court of Appeals for the First Circuit, said:

"It requires no discussion or citation of authorities to show that only a very plain case would warrant a court of equity in issuing an injunction tending to cripple a government in the collection of taxes necessary for its existence and performance of its essential public duties."

A reading of the opinion in *The Texas Co.* v. *Treasurer*, 50 P.R.R. 415, will suffice to distinguish that case.

Section 4 of our local statute on the subject of injunctions, as amended in 1927, (Session Laws, p. 166) forbids the granting of an injunction "to prevent the levying or collection of any tax levied by the laws of the United States or of Porto Rico". The construction and application of such statutes is discussed in a note to *Huston* v. *Iowa Soap Co.*, 108 A.L.R. 173, 184.

From a note to *North American Old Roman Catholic Diocese* v. *Havens*, 84 A.L.R. 1313, 1319, we take the following extracts:

"It is held by the great majority of courts which have discussed the point, but the mere illegality of a tax because assessed against tax-exempt property does not justify the issuance of an injunction

against the enforcement of the tax, in the absence of some other element, such as inadequacy of legal remedy, irreparable injury, cloud on title, or multiplicity of suits, presenting a case for the exercise of equity jurisdiction.'' (Page 1319.)

''In order to confer upon a Federal Court equitable jurisdiction to restrain the collection of a state tax on patent rights which are exempt from state taxation, on the grounds that no adequate remedy exists at law and that irreparable injury will result to the complainant, it has been held not to be sufficient merely to state the conclusion that the enforcement of the tax will result in irreparable injury and that the complainant has no adequate remedy at law; there must be some averment of specific facts from which the court can see that irreparable injury would be a natural and probable result. *Indiana Mfg. Co.* v. *Koehne* (1903), 188 U. S. 681, 47 L. ed. 651, 23 S. Ct. 452.'' (Page 1321.)

''There is very little direct authority for the proposition that equity will restrain the enforcement of a tax, simply because it is against property which is by law exempt from taxation, without the establishment of any of the usual grounds of equity jurisdiction, such as a cloud on title, multiplicity of suits, or irreparable injury.

''The cases which merely hold that injunction is a proper remedy to give effect to an exemption from taxation (subd. II, *supra*) are very weak authority for the principle that the exemption itself, without any of the other elements of equity jurisdiction, is sufficient to entitle the owners to an injunction, although the reports of the cases do not show the presence of any of those latter elements in the particular cases, where the courts do not discuss this particular point and the reports do not positively negative the existence of one or more of such elements. This observation applies even though the court may quote, in support of its holding that injunction lies against a tax on exempt property, the statement of High in his work on Injunctions, that 'the attempted enforcement of a tax upon property which has been exempted by proper legislative authority from the burdens of taxation constitutes a grievance of so irreparable a nature as to merit preventive relief'.'' (Pages 1321–1322.)

''It is well settled that where there exists some element in addition to the illegality of the tax, bringing the case within some established ground of equity jurisdiction, such as a cloud on title, a multiplicity of suits, or an irremediable injury, and there is no adequate remedy at law, equity will grant an injunction against a tax on property which is exempt from taxation.'' (Page 1322.)

Section 3 of "An Act providing for the payment of taxes under protest; establishing a procedure to authorize the collection and return thereof; . . . and for other purposes," approved April 19, 1927 (Session Laws, pp. 122, 124), reads in part as follows:

"A taxpayer who shall have paid under protest the whole or part of any tax may, within the term of one year from the date of payment, sue the Treasurer of Puerto Rico in an insular court of competent jurisdiction, or in the District Court of the United States for Porto Rico, to secure the return of the amount protested. . . . When the case is ready for trial, the court shall fix the day for the trial thereof, on petition of any of the parties, with preference to any other matter pending before it. When final decision is rendered, if favorable to the taxpayer, the Treasurer of Porto Rico shall proceed to return to him the amount directed in the decision, to be charged against any fund in the Treasury not otherwise appropriated plus interest on such amount at the rate of six (6) per cent per annum, computed from the date of the filing of the complaint in the court or on the petition of the taxpayer, the Treasurer shall credit him with the total amount to be returned, to be applied to the payment of any tax already due and unpaid or to become due in the future; *Provided,* That said credit may be transferred by the taxpayer, and then the Treasurer of Porto Rico shall credit it to the assignees, for all purposes of the law. Costs, expenses and attorney's fees shall be imposed in the discretion of the court in the same manner as in all other civil cases."

If plaintiff had paid under protest the $872.52 originally demanded of him, and had brought suit to recover that amount with interest, he could have obtained a final decision on the question of the alleged exemption within the same time—or perhaps less time—than has been spent in obtaining a final decision on the question as to his right to a preliminary injunction. We cannot assume with appellee that the Treasurer would not have awaited the result of such a suit before attempting to collect the taxes on the 250 or 260 chassis mentioned by plaintiff's general manager in his testimony.

738

The enforced collection of the $872.52 with penalties and costs would not have caused irreparable injury. No threat of any further demand had been made. Whether the enforced collection of the larger amount involved in a further demand would cause irreparable injury, is a question which will arise when the Treasurer takes the first step in a proceeding for such collection.

There was no sufficient averment of irreparable injury. At the hearing there was no satisfactory showing of irreparable injury. Plaintiff had an adequate remedy at law.

The order appealed from must be reversed.

Mr. Justice De Jesús took no part in the decision of this case.