**DICKERT v. HICKEY, Collector of Internal Revenue, et al.**

District Court, S. D. New York.

Nov. 9, 1940.

578

Budd, Coffey & Bertine, of Bronxville, N. Y. (Philip A. Obst, of New York City, of counsel), for complainant.

John T. Cahill, U. S. Atty., of New York City (William L. Lynch, of New York City, of counsel), for defendants.

HULBERT, District Judge.

Plaintiff, who maintains and operates a restaurant on East First Street in the City of Mount Vernon, in this District, seeks to permanently enjoin the defendants from executing a warrant of distraint to collect $403.70 (plus interest) assessed as a tax against the plaintiff on 367 gallons of alcohol, and from making any other levies on the same assessment.

It is alleged in the complaint that the tax was assessed upon liquor "possessed by plaintiff" which he denies, and that the assessment was made pursuant to Title II, Section 35, 41 Statutes, 317 of the Act of October 28th 1919, which is Title 27 U.S. C.A. §§ 1 to 89, popularly or otherwise known as the National Prohibition Act.

Plaintiff contends that the "tax" is a penalty and therefore uncollectible by a warrant of distraint but only by civil or criminal suit with a right to trial by jury, and that failure to enjoin the execution of the warrant of distraint would permit a violation of due process guaranteed by the United States Constitution, and that there is no adequate remedy at law.

Prior to the National Prohibition Act the Congress had imposed a tax under the revenue laws on distilled spirits (14 Stat. 480) and no distinction was then made between tax on spirits for beverage uses and non-beverage purposes. Such distinction was made for the first time by Section 300 of the Revenue Act of 1917, 40 Stat. 300. That law fixed $2.20 per proof gallon on spirits withdrawn for non-beverage use and $3.20 per gallon for those withdrawn for beverage use. Section 600 (a) of the Revenue Act of 1918, 40 Stat. 1057, continued the distinction but changed the beverage rate from $2.30 to $6.40 per gallon while the non-beverage rate remained at $2.20.

The National Prohibition Act became effective Jan. 16, 1920. Section 35 of Title II of that Act, Title 27 U.S.C.A. § 52, provided:

"All provisions of law that are inconsistent with this act [chapter] are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act [chapter] shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any il-

legal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve anyone from criminal liability, nor shall this act [chapter] relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

On November 23, 1921, the so-called Willis-Campbell Act, 42 Stat. 222, was passed supplementing the National Prohibition Act; Section 5 thereof, 27 U.S.C.A. § 3, provided as follows:

"All laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted [on October 28, 1919], shall be and continue in force, as to both beverage and non-beverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this Act [this title]; but if any act is a violation of any of such laws and also of the National Prohibition Act or of this Act [this title], a conviction for such act or offense under one shall be a bar to prosecution therefor under the other."

On the very same day the Revenue Act of 1921, 42 Stat. 227, was passed. It amended Section 600 (a) of the Revenue Act of 1918 to provide for the imposition of an additional tax of $4.20 per gallon on distilled spirits diverted to beverage uses after withdrawal from bond for non-beverage purposes and provided that the tax at non-beverage rate of $2.20 per gallon had been paid. § 600. Thus the total tax asserted against such diverted spirits equalled the $6.40 rate payable under the Revenue Act of 1918 on spirits withdrawn for beverage uses. Apparently because the new amendment was so drawn that spirits withdrawn *for industrial use* and then diverted for beverage purposes escaped the $6.40 tax, the Congress again amended Section 600 (a) of the Revenue Act of 1918 and in Section 900 of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 302, provided as follows:

"Sec. 900. Subdivision (a) of section 600 of the Revenue Act of 1918, as amended, is amended to read as follows:

" 'Sec. 600. (a) There shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, in lieu of the internal-revenue taxes now imposed thereon by law, an internal-revenue tax at the following rates, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law:

\* \* \* \* \* \*

" '(3) On and after January 1, 1928, $1.-10 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon.

" '(4) On and after the enactment of the Revenue Act of 1926, on all distilled spirits which are diverted to beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage there shall be levied and collected a tax of $6.40 on each proof gallon or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the person responsible for such diversion. If a tax at the rate of $2.20, $1.65, or $1.10 per proof or wine gallon has been paid upon such distilled spirits a credit of the tax so paid shall be allowed in computing the tax imposed by this paragraph.' "

The defendant denies that the assessment complained of was made under the provisions of Section 35, Title II of the National Prohibition Act, and contends that the assessment was made under the provisions of the Revenue Act for the reason that the face amount of the assessment of $1.10 per gallon on 367 gallons, making a total of $403.70, shows that it is the basic tax which is being claimed from the plaintiff.

While it is true that impositions under the National Prohibition Act, and particularly Section 35 thereof, were penalties, the collection of which could be enjoined (Lipke v. Lederer, 1922, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Corp. v. Wardell, 1922, 260 U.S. 386, 43 S. Ct. 152, 67 L.Ed. 318) the Government thereafter sought to forfeit, by libel proceedings under a provision of the revenue law, an automobile in which untaxpaid illicit liquors had been transported or con-

cealed, and the Supreme Court discussed at great length the provisions of the National Prohibition Act as contrasted to the provisions of the Revenue Law and found them not to be in conflict. United States v. One Ford Coupé Automobile, 1926, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025. In referring to the basic tax on liquor the Court said in that case at pages 326–329 of 272 U.S., at page 156 of 47 S.Ct.:

"First. The claimant contends that, at the time of the seizure, the law did not impose any tax upon liquor illicitly made. Congress has power to tax such liquor. United States v. Yuginovich, 256 U.S. 450, 462, 41 S.Ct. 551, 65 L.Ed. 1043; United States v. Stafoff, 260 U.S. 477, 480, 43 S.Ct. 197, 67 L.Ed. 358. By Rev.Stats. § 3248 [26 U.S.C.A. Int.Rev.Code, § 2800(c)] the tax attaches to distilled spirits 'as soon as it is in existence as such,' (United States Fidelity & Guaranty Co. v. United States [4 Cir.], 220 F. 592), and upon its production the tax becomes a first lien thereon (United States v. Ulrici, 111 U.S. 38, 42, 4 S.Ct. 288, 28 L.Ed. 344). The Revenue Act of 1918 (February 24, 1919, c. 18, § 600, 40 Stat. 1057, 1105, * * *) lays the tax 'on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States.' The provision in Section 600b of the act, * * * concerning liquor which could not during the period of war-prohibition be lawfully sold or removed, did not remit the tax; it merely deferred the time for payment. It is clear that, before the enactment of the National Prohibition Act, it imposed the basic production tax upon all distilled spirits, although illicitly made.

"The continued existence of taxes upon illicit liquor is indicated in Section 35 of the National Prohibition Act (p. 317), * * * which provides: 'This act shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor.' That Congress in enacting that law would intentionally have exempted illicit liquor from taxation, is not likely. Moreover, we are not dealing with the construction of the law as enacted in 1919. The Willis-Campbell Act; (November 23, 1921, c. 134, § 5, 42 Stat. 222, 223 * * *), supplemental thereto, continued in force or re-enacted, by express provision, all laws in regard to the taxation of intoxicating liquor not directly in conflict with the prohibitory legislation. Furthermore, the Revenue Act of 1921, (November 23, 1921, c. 136, § 600, 42 Stat. 227, 285 * * *), enacted on the same day, shows that Congress had no intention then of relieving liquor from taxation merely because illegally dealt with; for it provided specifically that if distilled spirits, tax-paid for nonbeverage purposes, be diverted to beverage purposes, an additional tax of $4.20 per gallon must be paid, although under the law such diversion could not be made legally.

\*      \*      \*      \*      \*      \*

"A law which imposes a tax on intoxicating liquor, whether legally or illegally made, is not in conflict with another law which prohibits the making of any such liquor.

\*      \*      \*      \*      \*      \*

"A tax on intoxicating liquor does not cease to be such because the sovereign has declared that none shall be manufactured, and because the main purpose in retaining the tax is to make law breaking less profitable. What was sought to be enforced and held to be a penalty in Lipke v. Lederer, 259 U.S. 557, 561, 42 S.Ct. 549, 66 L.Ed. 1061, was the so-called double tax. Here, we are dealing with the basic production tax.

"With respect to the character of the impositions called taxes, there is nothing in either the Revenue Acts or the Prohibition Act which makes any distinction between the product of legal and illegal distillation. The acts left in effect the basic tax of $2.20 per gallon, which was and is a true tax on the product, whether legally or illegally distilled, and added to it the additional amounts in case of illegal distillation or diversion to illegal uses. These additional amounts also are called taxes by Congress, and were understood by it to be such. Whether they were intrinsically penalties, and should be treated as such, we need not determine. The basic tax of $2.20 a gallon on liquor illegally produced is not imposed because of illegality, but despite of it.

\*      \*      \*      \*      \*      \*

"Under Section 3450 [26 U.S.C.A. Int. Rev.Code, § 3321], it is not essential that the offender must have been either the manufacturer, or importer of the liquor, or a person directly associated with him. The government may look for payment also to the liquor itself and to whoever has possession of it."

As soon as a case dealing with the amendment contained in the Revenue Act of 1926 came before the Supreme Court, the principle previously enunciated was reiterated. In Various Items of Personal Property et al. v. United States, 1931, 282 U.S. 577, at page 579, 51 S.Ct. 282, at page 283, 75 L.Ed. 558, referring to Section 600(a), as amended, the Court said: "Included in the $6.40 is the basic tax of $2.-20, which is not a penalty but a true tax."

On the very day that the Various Items of Personal Property case, supra, was decided, the Supreme Court also passed judgment in the case of United States v. La Franca. 1931, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551, and followed its previous decisions in Lipke v. Lederer, supra, and Regal Drug Corp. v. Wardell, supra, that the impositions listed in Section 35 of Title II of the National Prohibition Act were penalties rather than true taxes.

More recently, in the case of United States v. Rizzo, 1936, 297 U.S. 530, at page 533 56 S.Ct. 580, at page 582, 80 L.Ed. 844, the Court, in sustaining the Government, said:

"Second. Rizzo contends that the tax sought to be recovered is a penalty imposed for violation of the National Prohibition Act * * *; hence uncollectible, because of the repeal of the Eighteenth Amendment. United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R 1510. But this tax is not a penalty. It is the basic tax upon distilled spirits, irrespective of their legal or illegal origin. United States v. One Ford Coupé, 272 U.S. 321, 328, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025; Various Items of Personal Property v. United States, 282 U.S. 577, 579, 51 S.Ct. 282, 75 L.Ed. 558. * * *"

■ See, also, Ferroni v. United States, 7 Cir., 1931, 53 F.2d 1013, certiorari denied 1932, 285 U.S. 543, 52 S.Ct. 395, 76 L.Ed. 935, holding the $1.10 tax to be a true tax and not a penalty, and Larson v. House et al., 5 Cir., 1940, 112 F.2d 930, wherein a decree of the lower court granting the injunction was reversed.

■ Section 3224 of the Revised Statutes, 26 U.S.C.A. Int.Rev.Code, § 3653, provides: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court".

The courts have uniformly accepted this statute as the basis for the denial of injunctive relief against the collection of taxes.

The only exception, of which I am aware, is Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and that decision was based upon the unusual circumstances in that case which do not exist here.

■ Finally, no facts are shown either in the complaint or the plaintiff's moving affidavit that he will be irreparably damaged by the ordinary procedure of paying the tax and suing for a refund. The mere assertion that plaintiff is without adequate legal remedy or will suffer irreparable injury unless equitable relief is granted are insufficient to state a claim upon which relief can be granted in equity. Facts and circumstances sufficient to sustain the conclusions asserted must be alleged with particularity. Milliken et al. v. Stone et al., 2 Cir., 1927, 16 F.2d 981, certiorari denied 1927, 274 U.S. 748, 47 S.Ct. 764, 71 L.Ed. 1331; Shelton v. Platt, 1891, 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273; Bailey v. George et al., 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816; Huston v. Iowa Soap Co., 8 Cir., 1926, 85 F.2d 649, 108 A.L.R. 173, certiorari denied 1936, 299 U.S. 594, 57 S.Ct. 119, 81 L.Ed. 437.

It is also well settled that plaintiff must show that he has exhausted his legal remedies before a court will intervene in his behalf. He has neither alleged nor proved that he has filed and had rejected a claim in abatement.

The plaintiff's application for a preliminary injunction will be denied and the temporary restraining order vacated, and the complaint dismissed. Settle order.